### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

### JACKSON, APRIL TERM, 1917.

P. D. Ewell *v.* Mary A. Sneed *et al.*

(*Jackson.* April Term, 1917.)

1. CHARITIES. Charitable trust. Creation. Want of trustee.

A bequest to two trustees to be appointed by a synod, an unincorporated organization, to be used in educating young ministers, is invalid for want of trustees. (*Post, pp.* 608-623.)

Cases cited and approved: Oakley v. Long, 29 Tenn., 254; Dickson v. Montgomery, 31 Tenn., 348; Franklin v. Armfield, 34 Tenn., 305; Gass v. Ross, 35 Tenn., 211; Frierson v. General Assembly, 54 Tenn., 683; White v. Hale, 42 Tenn., 77; Cobb. Denton, 65 Tenn., 235; Daniel v. Fain, 73 Tenn., 319; Reeves v. Reeves, 73 Tenn., 644; State v. Smith, 84 Tenn., 662; Heiskell v. Chickasaw Lodge, 87 Tenn., 668; Rhodes v. Rhodes, 88 Tenn., 637; Johnson v. Johnson, 92 Tenn., 559; Carson v. Carson, 115 Tenn., 37; Jones v. Green, 36 S. W., 729; Monil v. Lawson, 4 Viner's Abridgment, 561; Attorney General v. Vivian, 1 Russell, 226; Attorney General v. Downing, Ambler, 550; Attorney General v. Herrick, Ambler, 712; Da Costa v. Da Pass, 27 Eng. Rep. 462; Attorney General v. Peacock, 27 Eng. Rep., 462; Mills v. Farmer, 1 Mer. 55; Reeve v. Attorney General, 3 Hare, 191; Watkins v. Specht, 47 Tenn., 585; Williams v. Neil, 51 Tenn., 279; Taylor v. Chapman, 59 Tenn., 46; Vincent v. Hall, 1 Shan. Cas., 597; Bransford Realty Co. v. Andrews, 128 Tenn., 725.

Ewell v. Sneed.

Cases cited and distinguished; Green v. Allen, 24 Tenn., 170; Moggridge v. Thackwell, 7 Vesey, 36; Eyere v. Shaftesberry, 2 Peere Williams, 119; Attorney General v. Mayor, etc., of Dublin, 1 Bligh. (N. S.), R. 312; Cooke v. Duckenfield, 2 Atkyns, 564; Bayliss v. Attorney General, 2 Atk., 239; Owens v. Missionary Society, 14 N. Y., 408; People v. Cogswell, 113 Cal., 129; Daily v. New Haven, 60 Conn., 314; Mormon Church Case, 136 U. S., 59.

2. TRUSTS. Appointment of trustees. Notice to beneficiary.

There can be no valid original appointment of a trustee without notice to some, at least, of the beneficiaries, or some representation of them before the court. (*Post, p.* 623.)

3. CHARITIES. Charitable trust. Appointment of trustees.

Where the beneficiaries of a charitable trust are not named, or are uncertain individuals of an unascertained class so that no one of them can sue or be sued respecting the trust, no one can appear for them except *parens patriae*, or some official to whom that prerogative has been delegated. (*Post, p.* 624.)

4. CHARITIES. Charitable trust. Appointment of trustees.

In Tennessee, no official has been intrusted with the authority and duties of *parens patriae* to represent the unascertained beneficiaries of a charitable trust, and the chancellor therefore cannot originally appoint a trustee for such trust. (*Post, p.* 624.)

5. CHARITIES. Charitable trusts. Appointment of trustees. Statute.

Shannon's Code, section 5166, authorizing the attorney-general to maintain action to bring the trustees of a charitable trust to an accounting for the management of the property, to remove such trustees, and to secure the funds for the benefit of those interested, presupposes the valid appointment of trustees, and does not authorize the attorney-general to represent unascertained beneficiaries of a charitable trust so as to permit the appointment of trustees where none were originally appointed. (*Post, pp.* 624, 625.)

Code cited and construed. Sec. 5166 (S.).

6. **COURTS. Rules of decision. Former decisions. Rules of property.**

Prior decisions as to ,charitable devises in trust which have become rules of property cannot be overturned to harmonize with the majority of decisions in other jurisdictions. (*Post, pp.* 625-627.)

7. **WILLS. Revocation by codicil.**

Ordinarily a will and codicil are construed together, and the latter will not be deemed to revoke the former, unless such an intention is expressed or necessarily implied. (*Post, p.* 627.)

Cases cited and approved: Ford v. Ford, 31 Tenn., 431; Ward v. Saunders, 32 Tenn., 174; Hornberger v. Hornberger, 59 Tenn., 635; Reagan v. Stanley, 79 Tenn., 316; Armstrong v. Douglass, 89 Tenn., 219; Billington v. Jones, 108 Tenn., 238.

8. **WILLS. Revocation by Codicil. Void gift.**

Where the original will gave the residue to the uncle of testatrix, a codicil giving the uncle only a life interest therein and attempting to give the rest in trust for a charity, which trust was void for want of trustees, revoked the will only conditionally, if at all, and, the condition having failed, the property passes to to the uncle under the original will. (*Post, pp.* 627-629.)

Cases cited and approved: Reeves v. Reeves, 73 Tenn., 644; Bradford v. Leake, 124 Tenn., 313.

Cases cited and distinguished: Stover v. Kendall, 41 Tenn., 561; Cowan v. Walker, 117 Tenn., 135.

FROM FAYETTE.

Appeal from the Chancery Court of Fayette County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court— COLIN P. McKINNEY, Chancellor.

ROANE WARING, for plaintiff.

R. M. BARTON, W. H. BORSJE and LUKE E. WRIGHT, for Mary A. Sneed and John S. Webb, Adm'r.

T. K. RIDDICK, TIM E. COOPER and H. C. MOORMAN, for defendant Young Ministers, etc.

M. C. KETCHUM, for general heirs at law and distributees of Mary H. Ewell, deceased.

MR. JUSTICE GREEN delivered the opinion of the Court.

This case involves primarily the validity of a provision of the will of Mary H. Ewell, deceased, for the education of young ministers of the Presbyterian Church.

Mary H. Ewell was a resident of Fayette county, Tenn., and died testate March 11, 1912. Her will consisted of an original testament and codicil thereto. The provisions of the body of the will are not material in this connection. With the exception of certain small legacies, Miss Ewell devised and bequeathed her property to her uncle, Robert H. Shepherd. He was also named as residuary legatee. This will was dated June 22, 1885. On June 3, 1907, she added a codicil in the following language:

"In the name of God Almighty, amen. I, Mary H. Ewell, being of sound mind, do this day, June 3, 1907, will and bequeath all of my property both real and personal to my beloved uncle, Robert H. Shepherd during

his lifetime. At his death all real estate to be sold and all money collected and held by two trustees to be appointed by the Synod of Memphis and the said money to be used in educating young ministers of the Presbyterian Church. I desire all of my household goods and jewelry to be given to my namesake Mary H. Ewell.''

After the death of the testatrix, the will and codicil were duly probated. Mr. Shepherd qualified as executor and later died.

Miss Ewell was a member of the Presbyterian Church at La Grange, Tenn. La Grange Church was within the bounds of what was known as the ''Synod of Memphis'' formerly. Prior to the death of Miss Ewell the Synod of Memphis was abolished and the Presbyterian Church in the United States placed the churches belonging to that synod in the Synod of Tennessee. The synod is a voluntary, unincorporated religious association—a sort of intermediate church court, without legal entity.

The Synod of Tennessee elected two trustees, C. W. Heiskell and G. W. McRae, to administer the trust attempted to be created by Miss Ewell's will.

The personal representative of Miss Ewell filed this bill against the aforesaid trustees and against the heirs and distributees of Miss Ewell, and the heirs and distributees of R. H. Shepherd, seeking a construction of the will and directions from the court as to the proper disposition to be made of the estate in his hands.

The trustees appointed by the Synod of Tennessee answered and filed a cross-bill to which they made the attorney-general of Tennessee a party, as well as the heirs and representatives of the testatrix, and of R. H. Shepherd, and it was insisted by the trustees that the provision of Miss Ewell's will for the education of young ministers of the Presbyterian Church was valid and should be upheld. The attorney-general concurred in this contention in the answer to the cross-bill filed by him. All the heirs and representatives assailed the validity of said provision of the codicil, and by appropriate pleadings, they presented the question as to which set of them should take the estate in the event the court held the attempted charitable trust invalid. This controversy between the heirs and representatives will be noticed later.

The chancellor decreed in favor of the codicil and himself appointed or ratified the appointment of the two trustees who had been nominated by the Synod of Memphis, and directed that the estate be turned over to said trustees for the purposes indicated by the will.

The court of civil appeals reversed this decree of the chancellor, and concluded that the testatrix had failed in her effort to establish a valid charitable trust, and that court held the heirs and representatives of Mr. Shepherd to be entitled to the estate.

The case is before us on a petition for *certiorari* filed by the trustees, and upon petition for *certiorari* of the heirs and representatives of the testatrix.

As indicated heretofore, the first question in the case is upon the validity of the provision for the education of young ministers of the Presbyterian Church.

In the consideration of this question the court feels obliged for the most part to confine the discussion of authorities to the decisions of this State. We have so many cases involving charitable trusts and the leading principles of law on this subject have been so well settled in Tennessee, that we cannot be governed by decisions from other courts. We will, therefore, only look to other cases in so far as it becomes necessary to vindicate the soundness of certain former rulings of this tribunal that are assailed herein.

The first case arising in Tennessee upon the question of charities was that of *Green* v. *Allen,* 24 Tenn. (5 Humph.), 170. The opinion in this case was delivered by Judge TURLEY. It has long been regarded by the profession as a classic in the law, and the fundamental rules there laid down have never been modified or consciously departed from by this court.

It is shown in *Green* v. *Allen* that the court of chancery in Tennessee possesses only that jurisdiction formerly exercised by the chancellors of England known as the "extraordinary jurisdiction," as distinguished from prerogative and other jurisdiction, and Judge TURLEY then says:

"I therefore think that we may safely assume that the power of the chancellor to decree an execution of a trust for charitable purposes so far as it arises out of his extraordinary jurisdiction, rests upon the same

principles as trusts of every other kind and description, and that there must be either a *cestui que trust*, having sufficient legal capacity to take as devisee, or donee, or that there must be a *feoffee* or trustee, charged with a specific and legal trust, before the jurisdiction can be exercised.''

Again the learned judge says:

''If the charity be created either by devise or deed, it must be in favor of a person having sufficient capacity to take as devisee or donee, or if it be not to such person, it must be definite in its object, and lawful in its creation, and to be executed and regulated by trustees, before the court of chancery can, by virtue of its extraordinary jurisdiction, interfere in its execution.'' *Green* v. *Allen*, supra.

These conclusions, thus expressed, have been approved or applied by this court in the following reported cases: *Oakley* v. *Long*, 29 Tenn. (10 Humph.), 254; *Dickson* v. *Montgomery*, 31 Tenn. (1 Swan), 348; *Franklin* v. *Armfield*, 34 Tenn. (2 Sneed), 305; *Gass* v. *Ross*, 35 Tenn. (3 Sneed), 211; *Frierson* v. *General Assembly*, 54 Tenn. (7 Heisk.), 683; *White* v. *Hale*, 42 Tenn. (2 Cold.), 77; *Cobb* v. *Denton*, 65 Tenn. (6 Baxt.), 235; *Daniel* v. *Fain*, 73 Tenn. (5 Lea), 319; *Reeves* v. *Reeves*, 73 Tenn. (5 Lea), 644; *State* v. *Smith*, 84 Tenn. (16 Lea.), 662; *Heiskell* v. *Chickasaw Lodge*, 87 Tenn., 668, 11 S. W., 825, 4 L. R. A., 699; *Rhodes* v. *Rhodes*, 88 Tenn., 637, 13 S. W., 590; *Johnson* v. *Johnson*, 92 Tenn., 559, 23 S. W., 114, 22 L. R. A., 179, 36 Am. St. Rep., 104; *Carson* v. *Carson*, 115

Tenn., 37, 88 S. W., 175; *Jones* v. *Green* (Ch. App.), 36 S. W., 729.

Besides the propositions above quoted from *Green* v. *Allen,* certain other conclusions reached in that case have been approved and applied from time to time in the subsequent cases cited above.

One of these is that the functions of the king as *parens patriae,* with respect to the administration of charities, have not been devolved upon any officer or department of government in Tennessee. Another rule laid down in *Green* v. *Allen,* and followed in White v. *Hale, Daniel* v. *Fain,* and *Reeves* v. *Reeves,* is that a charity must stand or fall as it was at the death of the testator and cannot be validated by any subsequent action.

Likewise, wherever reference is made to these matters in our cases the doctrine of *cy pres* has been repudiated, and the Statute of 43 Elizabeth, c. 4, declared not to be in force in Tennessee.

In a number of our cases charitable bequests have been upheld because they were definite in their objects and were supported by trustees. Such cases are *Dickson* v. *Montgomery, Franklin* v. *Armfield, Cobb* v. *Denton, Frierson* v. *General Assembly, Heiskell* v. *Chickasaw Lodge,* and *State* v. *Smith,* and perhaps others unreported.

In some of our cases charitable bequests have been held invalid because their purposes were not sufficiently definite to be ascertained and effectuated by a court of chancery. Such particularly are the cases of *Rhodes*

v. *Rhodes, Johnson* v. *Johnson,* and *Jones* v. *Green.*

In *Green* v. *Allen,* the court held the bequest invalid both because it was not sustained by trustees, and because indefinite.

In *White* v. *Hale, Daniel* v. *Fain,* and *Reeves* v. *Reeves,* charitable bequests were held invalid for the reason that they were not supported by trustees, and apparently for that reason alone.

In the case before us, no trustees were appointed by the will, but it was the expressed intention of the testatrix that trustees should be appoined by the Synod to take the property and administer the trust.

It is insisted that a court of equity never allows a trust to fail for want of a trustee, and it is urged that this maxim applies as well to charitable trusts as to other trusts. Such indeed is the general rule, and this rule is applied to charitable trusts in many jurisdictions. The rule has no application, however, to charitable trusts in Tennessee. We cannot agree with learned counsel that this question is undecided in this State.

In *White* v. *Hale,* the testator devised certain property to his wife for life, and after her death to the Nolachucky Association, "to be appropriated to the support of old Baptist ministers of the Gospel of Jesus Christ, who have maintained a good character, and of the same faith and order of the Nolachucky Association." The will then continued:

"I devise and direct that my land be never sold; but that the said Association appoint and empower

some discreet member of their own body, who shall be authorized to rent and receive rents, and apply the same for the above purposes, as directed, forever; and such agent, when appointed, whenever found incapable, from want of ability or otherwise, to manage as above directed, the said Association shall supply the vacancy by appointing another, which power I give into the hands of said Association, forever."

In *Daniel* v. *Fain* the testator's will provided that a fund "be put into the hands of a trustee who is to be selected by the Union Presbytery or whatever Presbytery may embrace Jefferson county, to be employed by said trustee to assist some indigent young man in a preparatory course for the sacred ministery."

In both of these cases, almost identical with the present case, the provisions referred to were held ineffectual. Following *Green* v. *Allen* it was held that a charity must stand or fall as it was found to exist at the death of the testator, and that a provision for the appointment by voluntary unincorporated associations of trustees to manage property for charitable purposes would not validate such devises, and remedy the failure of the will to provide trustees capable of taking.

In *Reeves* v. *Reeves* there was a devise of a certain dwelling house and lot in Johnson City to testator's wife for life and at her death "to descend to the Christian Church, as a parsonage or ministerial house for said denomination of Christians." The Christian Church was not incorporated, and this devise was held invalid because no trustee was interposed. The court

quoted the rules laid down in *Green* v. *Allen* to the
effect that the devise must be in favor of a person hav-
ing sufficient capacity to take, or definite in its object,
and to be executed by trustees, and added:

"In other words, it must have all the elements of a
valid gift of the title either directly to the beneficiary,
or to a trustee with the trusts definitely settled, so that
they can be fairly executed by the court, by compelling
the trustee to perform them."

In *Reeves* v. *Reeves* the argument was made, as it is
here, that the court would not suffer a valid trust to
fail for want of a trustee, but this court said that rule
had no application to a case like the one under consid-
eration.   Referring to the rule invoked, Judge FREE-
MAN observed:

"Its usual if not universal application is to cases
where a trustee is designated, who fails from any cause
to act.   Be this as it may, however, it is not in this case
the failure of a validly created trust for want of a
trustee, but the failure is to create the trust at all, or
the failure of the gift entirely, because of want of
capacity of the donee to receive, and no conveyance
to any one in trust for such party, with the objects of
such trust defined."

It is impossible to believe that the court did not con-
sider the propriety of the appointment of trustees in
*Daniel* v. *Fain* and *Reeves* v. *Reeves*.   The purpose of
the charities sought to be created in these cases had
been exprssly approved by the court in *Dickson* v.
*Montgomery*—the relief of indigent ministers.   Like-

wise, the purpose was definite enough had trustees been interposed. If it had been possible to carry out the intention of the testator in either of these two cases by the appointment of trustees, it would no doubt have been done. Both wills, however, were held ineffective in the particulars mentioned merely because the charitable provisions were not supported by trustees.

In addition to what was said by the court in *Reeves* v. *Reeves* there is another reason why such a charitable bequest lacking a trustee cannot be saved in Tennessee. This reason is clearly brought out in *Green* v. *Allen,* but has been sometimes overlooked.

In England the king, as *parens patriae,* was the constitutional trustee of all gifts to charity. Prior to the Statute of 43 Elizabeth, as well as thereafter, where a bequest for charity was general and indefinite in its terms, and not to trustees, the title to the property vested in the king as father of his people, and by sign manual he provided or gave directions to the chancellor as to its proper execution. If the bequest was to trustees with general objects, or some objects pointed out, the charity was enforced by information of the attorney-general who came into court representing the king, the constitutional trustee, and upon this information of the attorney-general, the chancellor referred the matter to a master to devise a scheme for carrying out the charity.

In the case of *Moggridge* v. *Thackwell,* 7 Vesey, 36, Lord Eldon made an exhaustive review of cases involving charitable trusts, and concluded:

"It is established that where money is given to charity generally and indefinitely without trustee or objects selected, the king, as *parens patriae,* is constitutional trustee  .  .  .  where there is a general indefinite purpose of charity not fixing itself upon any object, the disposition is in the king by sign manual; but where the execution is to be by trustees with general or some objects pointed out, the court will take the administration of the trusts."

These conclusions of Lord ELDON were noted in *Green* v. *Allen,* and this court said:

"All charities, not supported by trustees (unless in favor of an individual or a corporation, having power to implead or be impleaded), if of a general indefinite purpose, are administered by the chancellor under the sign manual of the king.  All charities supported by trustees, with general objects, or some particular object pointed out, are administered by the chancellor by original bill, upon information of the attorney-general, who acts for and in behalf of the king, and is a party thereto, and the jurisdiction in the two latter class of cases, arises out of delegated prerogative."

This court again said in *Green* v. *Allen*:

"We have no *parens patriae.*  We have no attorney-general representing the executive, who can, as such, give information by bill, for the establishing and enforcing of trusts for charitable purposes.  And the necessary consequence is, that the superstructure must fall with the basis upon which it rested."

In *Oakley* v. *Long,* the court said:

"We have no king, whose duty, and prerogative it is, as *parens patriae,* to take care of persons who have lost their intellects. Nor is there any department of our government which has the right to exercise the duties and powers which belong, in England, to the prerogatives of the crown, unless those duties and powers have been conferred by statute."

Where the beneficiaries of a charitable bequest are uncertain as the poor of a particular parish or young ministers of the Presbyterian Church, there is no one who has a right to bring suit respecting such a bequest as representative of such beneficiaries; no one has sufficient interest therein except some such authority as *parens patriae.* This seems definitely settled by the English decisions reviewed in *Green* v. *Allen,* and others we will notice.

One reason, therefore, that a trustee cannot be appointed to save a charitable trust in Tennessee where none is named, is that there has been cast upon no official or department of government in this State the authority and duties of *parens patriae,* and there is no one to represent the beneficiaries who can come into court and ask that such a trust in favor of persons incapable of suing be established and a trustee appointed.

Mr. Daniell says:

"If suit is instituted on behalf of the crown or of those who partake of its prerogative or whose rights are under its particular protection, such as objects of a public charity, the matter of complaint is offered to the court not by way of petition, but by information by

the proper officer of the rights which the crown claims on behalf of itself or others and of the invasion or detention of those rights for which the suit is instituted. This proceeding is then styled an information.'' 1 Daniell, Ch. Pr. 1.

''The attorney-general may exhibit informations on behalf of individuals who are considered to be under the protection of the crown *parens patriae,* such as the objects of general charities, idiots, and lunatics.'' 1 Daniell, Ch. Pr., 8.

''These suits are of course brought by the attorney-general as a queen's officer to protect the rights of those who partake of her prerogatives.'' 1 Daniell, Ch. Pr. 8.

Sir JOSEPH JEKYL said:

''In case of charity, the king *pro bono publico* has an original right to superintend the care thereof, so that abstracted from the statute of Elizabeth relating to charitable uses, and antecedent to it as well as since, it has been every day's practice to file informations in chancery in the attorney-general's name for the establishment of charities.'' *Eyere* v. *Shaftesberry,* 2 Peere Williams, 119.

See, also, 3 Lewin on Trusts, marginal page 927; 2 Perry on Trusts, section 732.

There are a number of English cases in which the chancellor declined to proceed where the application was for the establishment of charities by the appointment of trustees, or in other respects until the attor-

ney-general was made a party. The attorney-general is an indispensable party.

Lord REDESDALE said:

"The right which the attorney-general has to file an information is a right of prerogative; the king as *parens patriae* has a right by his proper officer to call upon the several courts of justice according to the nature of their several jurisdictions, to see that right is done to his subjects, who are incompetent to act for themselves, as in the case of charities and other cases; the case of lunatics, where he has also a special prerogative to take care of the property of a lunatic; and where he may grant the custody to a person, who, as a committee may proceed on behalf of the lunatic; or where there is no such grant, the attorney-general may proceed by his own information." *Attorney-General v. Mayor, etc., of Dublin,* 1 Bligh (N. S.), R. 312.

In the case of *Monil* v. *Lawson* there was a bill filed respecting a charity, and it was objected to the prosecution of that suit that the attorney-general was not a party. The court held that the attorney-general was not a necessary party because trustees had been appointed who were entitled to receive the fund and sue for it. The Lord Chancellor said, however, that where a bill is brought to establish a charity, it must be brought in the name of the attorney-general *ex necessitate rei* because there are no certain persons entitled to it who can sue in their own names. *Monil* v. *Lawson,* 4 Viner's Abridgment, 501.

In the case of *Attorney General* v. *Vivian,* 1 Russell, 226, an information and a bill were both filed in respect to the charity. The Master of Rolls dismissed the bill because complainant failed to show an interest, but retained the information.

In *Cooke* v. *Duckenfield,* which was a suit between some trustees and executors of the heirs, several matters were involved, but a general charity for widows and orphans was in question, and the court ordered the attorney-general to be made a party to represent them. The court said at the outset of the opinion:

"The bill must be amended, and the attorney-general, in behalf of the charity to widows and orphans of dissenters and to testator's poor relations, must be made a party." *Cooke* v. *Duckenfield,* 2 Atkyns, 564.

In the case of *Bayless* v. *Attorney General,* there was a charity devised in favor of "Bread Street Ward" of a city. The bill was brought by the aldermen and inhabitants of the ward for the application of the charity, and the attorney-general was made a defendant. The court said:

"Though the alderman and inhabitants of a ward are not in point of law a corporation, yet as they have made the attorney-general a party in order to support and sustain the charity, I can make a decree." *Bayliss* v. *Attorney General,* 2 Atk., 239.

An illustration of the proper way to establish a charity where the trustee dies, disclaims or fails, is the Downing College Case. The testator there left property to trustees to establish Downing College at Cam-

bridge. Before the college was established the trustees died. An information was then filed by the attorney-general upon the relation of Cambridge University for the setting up of this charity, which was decreed. *Attorney General* v. *Downing*, Ambler, 550, 571.

Other cases from England in accord with the foregoing are *Attorney General* v. *Herrick,* Ambler, 712; *Da Costa* v. *Da Pass & Attorney General* v. *Peacock,* 27 English Reprint, 462; *Mills* v. *Farmer,* 1 Mer., 55; *Reeve* v. *Attorney General,* 3 Hare, 191. And see cases reviewed in *Green* v. *Allen,* supra.

In those American cases which have considered this question, it is likewise declared that a charity not supported by trustees can only be established in proceedings to which the attorney-general of the State is a party.

In the Encyclopedia of Pleading we find the following:

"Where the trust is for a public charity, there being no certain persons who are entitled to it, so as to be able to sue in their own names, as *cestuis que trustent,* a suit for having the charity duly administered must be brought in the name of the state, or attorney-general, and it seems that in all cases the attorney-general may maintain the suit without a relator." 22 Enc. Pl. & Pr., 205.

Judge SELDEN of New York made an exhaustive examination of this question and said:

"It is equally plain that, where no beneficiary competent to sue was named, as where the trust was cre-

ated in general terms, as to establish or found a public school, an asylum for the poor, or the like, without designating any particular persons or body of persons to be benefited, there was no legal means whatever, prior to the Statutes of Elizabeth and to the use of informations in the name of the attorney-general, of enforcing the execution of the use.''

Informations in the name of the attorney-general bring the king in his character of *parens patriae* before the court through his legal representative. The remedy is based on the ordinary judicial power of the court, combined with the prerogative right of the crown as *parens patriae* to sue. *Owens* v. *Missionary Society,* 14 N. Y., 458, 67 Am. Dec., 160.

The reason for such an action respecting charitable trusts must be brought in the name of the State or attorney-general is thus stated by the supreme court of California:

''The State, as *parens patriae,* superintends the management of all public charities or trusts, and, in these matters, acts through her attorney-general.'' *People* v. *Cogswell,* 113 Cal., 129, 45 Pac., 270, 35 L. R. A., 269.

The supreme court of Connecticut said in a case where a fund was bequeathed to the city of New Haven in trust for its poor, and the city refused the trust, that it was proper for the State's attorney to apply for appointment of trustees to administer it ''in analogy to the English practice.'' *Dailey* v. *New Haven,* 60 Conn., 314, 22 Atl., 945, 14 L. R. A., 69.

Confirming the proposition that the chancery court can interfere only in those jurisdictions where the government is held to succeed to the prerogative of the crown, and where, as *parens patriae,* it invokes the court's aid, the supreme court of the United States said in the Mormon Church Case:

"The true ground is that the property given to a charity becomes in a measure public property, only applicable as far as may be, it is true, to the specific purposes to which it is devoted, but within those limits consecrated to the public use, and become part of the public resources for promoting the happiness and well-being of the people of the State. Hence, when such property ceases to have any other owner, by the failure of the trustees, by forfeiture for illegal application, or for any other cause, the ownership naturally and necessarily falls upon the sovereign power of the State; and thereupon the court of chancery, in the exercise of its ordinary jurisdiction will appoint a new trustee to take the place of the trustees that have failed or that have been set aside, and will give directions for the further management and administration of the property." *Mormon Church Case,* 136 U. S., 59, 10 Sup. Ct., 808, 34 L. Ed., 481.

There are cases in this country in which it has been stated broadly that a charitable trust will never be allowed to fail for want of a trustee, and in which trustees have been appointed and other orders made without reference to the attorney-general or without making the State, or the representative of the State, a

party. We can only say of these cases that in our judgment, they are not fully considered.

We have four cases in Tennessee holding it absolutely necessary that all the beneficiaries of a trust be represented in any proceedings in which a trustee is appointed. In two of these cases it is said that the appointment of a trustee in *ex parte* proceedings where all those interested have not had notice is absolutely void. *Watkins* v. *Specht,* 47 Tenn. (7 Cold.), 585; *Williams* v. *Neil,* 51 Tenn. (4 Heisk.), 279; *Taylor* v. *Chapman,* 59 Tenn. (10 Heisk.), 46; *Vincent* v. *Hall,* 1 Shan. Cas., 597.

In *Bransford Realty Co.* v. *Andrews,* 128 Tenn., 725, 164 S. W., 1175, the court thought perhaps these cases had gone too far and pointed out that the jurisdiction of a court of equity over a trust was a jurisdiction *quasi in rem,* and the court had some discretion as to parties. We there held valid the appointment of a trustee in proceedings to which remote contingent remaindermen were not parties. The immediate beneficiary of the trust was a party, however, and it was never intended to be intimated in *Bransford Realty Co.* v. *Andrews,* that the appointment of a trustee would be proper without any representation of the *cestuis que trustent.*

Certain deductions seem inevitable from the foregoing authorities.

There can be no valid appointment of a trustee without notice to some, at least, of the beneficiaries of the trust, or some representation of them before the court.

Where the beneficiaries of a charitable trust are not named, are at large, or are uncertain individuals of an unascertained class, no one of them has a right to sue or be sued respecting the trust, and no one is entitled to appear for them except *parens patriae,* or some official to whom that prerogative has been delegated.

In Tennessee no functionary has been intrusted with the authority and duties of *parens patriae* respecting charitable trusts. This power still inheres in the sovereign people.

It follows that a case like the one before us cannot be presented to the chancellor in such a way as to permit him to appoint trustees and set up the charity undertaken by the will. Such a decree cannot be made because it is impossible to get the necessary parties before the court.

Learned counsel for the trustees have no doubt been impressed with this difficulty, and, endeavoring to escape it, have made the attorney-general of Tennessee a party to this suit, referring to Shannon's Code, section 5166, as authority for this procedure. That section is as follows:

"The action also lies to bring the directors, managers, and officers of a corporation, or the trustees of funds given for a public or charitable purpose, to an account for the management and disposition of property intrusted to their care; to remove such officers or trustees on proof of misconduct; to prevent malversation, peculation, and waste; to set aside and restrain improper alienations of such property or funds, and to

secure them for the benefit of those interested; and generally to compel faithful performance of duty.''

The action referred to is one in the name of the state.

This section of the Code presupposes the appointment of trustees, and was passed to secure their performance of duty. It conferred no power upon the attorney-general to act as *parens patriae* and intervene or appear for the establishment of an invalid charitable trust. It did not make the attorney-general a royal trustee of charities. Said section of the Code was taken from the Acts of 1845-46, and has never been supposed to do more than provide a method of enforcing the due administration of charitable trusts lawfully created. The statute confers no more authority upon the attorney-general to set up and superintend the organization of a charitable trust than it does to organize a corporation. It provides a method for calling to account the trustees of one and the directors, managers, and officers of the other. It should be observed in this connection that it is upon the district attorneys-general, not upon the attorney-general for the State, that the principal authority is conferred by this statute.

We reserve the question of what may be done under this statute in a case where a charitable trust is lawfully created and title to the property has once vested in trustees named. It may be in such a case that the attorney-general can intervene if the trustees named die or refuse to act and have others appointed in their stead.

136 Tenn.—40

We cannot, for the sake of harmonizing our cases with what counsel conceives to be the majority rule, overturn all our decisions and uphold charitable devises such as this, regardless of the interposition of trustees. These decisions have become rules of property in Tennessee, and as such must be respected, if for no other reason.

We have assumed in this discussion that the charitable trust undertaken herein was sufficiently definite, had it been supported by a trustee. What we have said makes it unnecessary to consider this question.

There are some expressions in *Heiskell* v. *Chickasaw Lodge* and *Johnson* v. *Johnson* not altogether in harmony with what we have said in this opinion. The expressions, however, are pure dicta, and were not necessary to the decision of the questions before the court in those cases. In *Heiskell* v. *Chickasaw Lodge* there was a trustee, and the trust was definite. In *Johnson* v. *Johnson* the trust was too indefinite to be saved at all, and it was so held by the court.

Having concluded that the charitable trust attempted by the codicil to the will was invalid, and that the court cannot save it by the appointment of trustees, the question then arises as to the proper disposition of the estate.

There is a contest between the heirs and distributees of Robert H. Shepherd and those of the testatrix, as before stated.

It is insisted in behalf of the heirs and distributees of the testatrix that the codicil was a revocation of the

will; that accordingly Mary H. Ewell died intestate and her estate passed to them.

On the other hand, it is said for the heirs and distributees of Mr. Shepherd that the codicil was not a revocation of the will; that when the codicil failed, the property passed to him under the residuary clause in the body of the will.

The court of Civil appeals sustained the latter contention, and, we think, reached the correct result.

Ordinarily a will and a codicil are construed together, and a codicil will not be deemed a revocation of the will unless such an intention is expressed or is necessarily implied. *Ford* v. *Ford,* 1 Swan (31 Tenn.), 431; *Ward* v. *Saunders,* 2 Swan (32 Tenn.), 174; *Hornberger* v. *Hornberger,* 12 Heisk. (59 Tenn.), 635; *Reagan* v. *Stanley,* 11 Lea (79 Tenn.) 316; *Armstrong* v. *Douglass,* 89 Tenn., 219, 14 S. W., 604, 10 L. R. A., 85; *Billington* v. *Jones,* 108 Tenn., 238, 66 S. W., 1127, 56 L. R. A., 654, 91 Am. St. Rep., 751.

If, however, it be conceded that this codicil was intended as a revocation of the will, nevertheless such revocation was conditional and the case is controlled by *Stover* v. *Kendall,* 1 Cold. (41 Tenn.), 561, and *Cowan* v. *Walker,* 117 Tenn., 135, 96 S. W., 967.

In *Stover* v. *Kendall* it was said that:

"Obliterations and interlineations are inoperative to change a will, if made with a view of making a different disposition, which is not effectually carried out. So, if such change of purpose is not carried out, because of sudden death, or any other cause, or the attempted dis-

position is invalid, the canceling of the first, being dependent thereon, is null (and void), and does not effect the revocation of the original will, but it will stand as it was before the cancellation.''

In *Cowan* v. *Walker* the court approved this language from Jarmon on Wills, vol. 1, p. 294:

''And it may be observed that, where the act of cancellation or destruction is connected with the making of another will so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition, such will be the legal effect of the transaction; and, therefore, if the will intended to be submitted is inoperative from defect of attestation, or any other cause, the revocation fails also, and the original will remains in force.''

Mr. Pritchard takes the same view in his work on Wills and Administration, section 272.

It appears in this case that Miss Ewell was more devoted to her uncle, Robert H. Shepherd, than to any one else. She acknowledged and referred to her obligation to him in the will itself. The two sisters mentioned in the will died before the execution of the codicil. The majority of the heirs and distributees of Mises Ewell lived in remote sections of the country, and she had little acquaintance with them.

It is obvious, therefore, that she would not have revoked her will in favor of her uncle had she not supposed that the codicil in favor of young ministers was valid. The revocation of the original will depended upon the efficacy of the codicil, as is clearly apparent

from this record.   The testatrix did not intend to deprive her uncle of anything or cut down the estate given him in favor of her heirs and distributees.   Under our cases, we are accordingly satisfied that this codicil does not operate as a revocation of the will.

The will, therefore, not having been revoked by the codicil, and the codicil failing, the estate passed under the residuary clause of the will.   *Reeves* v. *Reeves,* 5 Lea (73 Tenn.), 644; *Bradford* v. *Leake,* 124 Tenn., 313, 137 S. W., 96, Ann. Cas., 1912D, 1140.

There is no error in the opinion of the court of civil appeals, and it will be affirmed.