STATE *ex rel.* JONES *et al. v.* WEST, SUPERINTENDENT
OF JUVENILE COURT, *et al.*

(*Jackson.* April Term, 1918.)

1. **HABEAS CORPUS. Custody of child. Juvenile court judgment.**
Under Thompson's Shannon's Code, section 5503, giving authority
to any judge of the circuit, common-law, or criminal courts, or
to any chancellor to issue a writ of *habeas corpus*, where the
juvenile court, in a proceeding under Acts 1911, chapter 58,
entered a judgment awarding custody of a child, the questions
determined in such proceeding cannot be again litigated in a
*habeas corpus* proceeding, by the same parties, on the same
state of facts. (*Post, pp.* 528-530.)

Acts cited and construed: Acts 1911, ch. 58.

Cases cited and approved: State ex rel. v. Paine, 23 Tenn., 523;
In re Barry (C. C.), 42 Fed., 113; In re Burrus, 136 U. S.,
586; New York Foundling Hospital v. Gatti, 203 U. S. 429;
People v. Chegaray, 18 Wend. (N. Y.), 637; United States
v. Green, 3 Mason, 482; Ewell v. Sneed, 136 Tenn., 602; Mormon
Church Case, 136 U. S., 1; State ex rel. v. Kilvington, 100 Tenn.,
227; Childress v. State, 133 Tenn., 121; Gudger v. Barnes, 51
Tenn., 571; State v. Bank, 95 Tenn., 212; Farnham v. Pierce, 141
Mass., 203; Kennedy v. Meara, 127 Ga., 68.

Case cited and distinguished: Ex parte Watkins, 3 Pet., 193.

Code cited and construed: Sec. 5503 (T.-S.). Constitution cited
and construed: Art. 1, sec. 15 (1870); Art. 1, sec. 15 (1834);
Art. 11, sec. 15 (1796).

2. **HABEAS CORPUS. Purpose of writ.**
The writ of *habeas corpus* cannot be made to serve the purpose
of an appeal or writ of error. (*Post, pp.* 530, 531.)

State ex rel. v. West.

3. **CERTIORARI.** Review of proceedings in juvenile court.

Proceedings in the juvenile court must be reviewed in the circuit court by *certiorari*. (*Post, p.* 531.)

Cases cited and approved: State ex rel. v. Taxing District, 84 Tenn., 240; State v. Bockman, 201 S. W., 741.

---

## FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— BEN L. CAPELL, Judge.

L. H. GRAVES, for plaintiffs.

JULIAN G. STRAUSS, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

This is a *habeas corpus* proceeding, brought by Chester R. Jones against the officers of the juvenile court in Memphis to obtain the custody of his minor child, Chester R. Jones, Jr.

Two or three days before this petition was filed, certain proceedings were had in the juvenile court in Memphis to which Chester R. Jones was a party, and it was there adjudged that the best interests of the child required that its custody be intrusted to a woman in Memphis, formerly a nurse. An order to this effect was accordingly entered, and in other pro-

ceedings had in the juvenile court the father, Chester R. Jones, was directed to contribute a certain weekly sum toward the care and maintenance of the child.

The pleadings in the *habeas corpus* case are not sent up with the transcript, but no point is made on that by either party. The only question discussed is the power of the criminal or law courts in Tennessee to try over the question of the custody of a minor child and determine what the child's best interests require, regardless of the action of the juvenile court in the premises, and in a different suit.

It is not denied that the proceedings with reference to this child were regular, and that the juvenile court had jurisdiction of the subject-matter under the act of 1911, nor is it insisted that the facts developed on the hearing of the petition for *habeas corpus* were at all different from the facts presented to the juvenile court. As noted above, only two or three days intervened between the two hearings.

Although the circuit judge allowed the parties to go into full proof tending to show what the best interests of the child required, he finally concluded that the writ of *habeas corpus* did not lie in such a case under such circumstances, and dismissed the petition. On appeal by the relator, this judgment was reversed by the court of civil appeals, and the child was awarded to his grandfather, the father of the relator Chester R. Jones. The authorities of the juvenile court have filed a petition for *certiorari*, which has been granted by this court, and the case heard here.

We are of opinion that the circuit judge properly dismissed the petition for *habeas corpus* and discharged the writ.

The disposition of the case submitted necessarily involves a consideration of the function of the writ of *habeas corpus* as employed affecting the custody of minor children.

Such use of the writ has been recognized in Tennessee from an early date, and there is a full discussion of the subject in *State ex rel.* v. *Paine,* 23 Tenn. (4 Humph.), 523.

In the United States circuit court for the Southern District of New York, Judge BETTS delivered an opinion in the case of *In re Barry* (C. C.), 42 Fed., 113. This opinion is a classic in the law, and was ordered by the supreme court to be printed as an appendix to its own opinion in *Re Burrus,* 136 U. S., 586, 10 Sup. Ct., 850, 34 L. Ed., 500, and was again commended and referred to in *New York Foundling Hospital* v. *Gatti,* 203 U. S., 429, 27 Sup. Ct., 53, 51 L. Ed., 254.

The learned judge in this discussion showed that *habeas corpus* was purely a prerogative writ. It issued to bring the parties imprisoned before the king in person, or some magistate or other representative of the supreme authority. If there appeared to be no due cause for the detention of the petitioner, the sovereign set him free—citing 3 Blackstone, Com., 131; Bacon's Abr. (Habeas Corpus) 421; 3 Story's Constitutional Law, 207; 2 Kent's Com., 26, 29; *Ex parte Watkins,* 3 Pet., 193, 202, 7 L. Ed., 650.

"In respect to married women or other adults, held in detention by private individuals, the sovereign, through this writ, acts as *conservator pacis* and *custos morum,* and in regard to infant children, as *parens patriae,* making, in these high capacities, summary order that the party be forthwith set at liberty, if improperly and wrongfully detained. Lofft, 748, and 13 Johns. [N. Y.], 418, above cited; *People* v. *Chegaray,* 18 Wend. [N. Y.], 637; 8 Paige, 47, above cited; *United States* v. *Green* [Fed. Cas. No. 15,256], 3 Mason, 482. The State, thus acting upon the assumption that its parentage supersedes all authority conferred by birth on the natural parents, takes upon itself the power and right to dispose of the custody of children, as it shall judge best for their welfare. *People* v. *Chegaray,* 18 Wend. [N. Y.], 642, 643; *Blisset's Case,* Lofft, 748.

"The cases before cited show that the English and American courts act in this behalf solely upon the assertion of the right of the sovereign whose power they administer, to continue or change the custody of the child at his discretion, as *parens patriae,* allowing the infant, if of competent age, to elect for himself; if not, making the election for him." *In re Burrus,* supra.

Under the change of government from a monarchy to a republic, the functions of *parens patriae* did not cease to exist. Such authority passed from the king to the government of the State or sovereign people, and it may be called into exercise by the legislature, the

representatives of the people, and delegated by the legislature to other functionaries. *Ewell* v. *Sneed,* 136 Tenn., 602, 624, 191 S. W., 131; *Morman Church Case,* 136 U. S., 1, 58, 10 Sup. Ct., 792, 34 L. Ed., 481, 496.

In *Ewell* v. *Sneed,* supra, following our earlier cases, we pointed out that at the time of the decision no officer in Tennessee had been intrusted with authority and duties of *parens patriae* respecting charities. This is what the charity cases mean when they say we have no *parens patriae.*

The writ of *habeas corpus,* however, was preserved as a part of our system of government by the federal Constitution (article 1, section 9), and by each Constitution of the State (1870, article 1, section 15; 1834, article 1, section 15; 1796, article 11, section 15.)

Authority to issue this writ is intrusted by statute to any judge of the circuit, common-law, or criminal courts, or to any chancellor in cases of equitable cognizance. Thompson's Shannon's Code, section 5503.

As it affects the custody of infants, the writ of *habeas corpus* rests on the assumption of a right in the State, paramount to any parental or other claim, to dispose of such children as their best interests require. The legal rights of a parent are very gravely considered, but are not enforced to the disadvantage of the child. Such is the universal practice, and it has been followed in this jurisdiction from *State ex*

*rel.* v. *Paine,* supra, to *State ex rel.* v. *Kilvington,* 100 Tenn., 227, 45 S. W., 433, 41 L. R. A., 284.

There is no reason to doubt that this sovereign power of the State to foster the welfare of the child may be exercised through other instrumentalities than the writ of *habeas corpus,* and may be enforced by agencies other than courts of law and equity.

In solicitude of this class of the population of the State, the legislature has created the juvenile courts by chapter 58 of the Acts of 1911, the validity of which enactment we upheld in *Childress* v. *State,* 133 Tenn., 121, 179 S. W., 643. These courts were established for the protection of our children, and are expressly authorized to remove delinquent or dependent children from unfavorable surroundings and adjudicate their proper custody, and separate them from their parents when such action appears to be for the best interests of the child. The jurisdiction conferred on these tribunals in such matters is ample.

Now, as we have said, the real office of the writ of *habeas corpus* in cases involving the custody of children is to develop before the court what the true interests of the detained child require, and an order is made accordingly.

This is the exact question which is presented to the juvenile court in all these cases intrusted to its jurisdiction.

An adjudication in one *habeas corpus* proceeding to determine the custody of a child is almost uniformly held to be conclusive on the parties, or *res adjudi-*

*cata* in a similar proceeding on the same state of facts. 21 Cyc., 351; 12 R. C. L., p. 1255.

We think that an adjudication of such a matter in the juvenile court is likewise conclusive on the parties on the same state of facts.

It is of course elementary that a judgment or decree in one suit is a bar to another suit between the same parties for the same object and purpose; the same point being directly in issue. Our cases to this effect will be found collected in 6 Enc. Dig. of Tenn. Rep., p. 193.

As a matter of fact, a judgment of a court of competent jurisdiction, upon a point or question directly involved, is conclusive in a second suit between the same parties, although the subject-matter of the second action be different. *Gudger* v. *Barnes,* 51 Tenn. 4 Heisk), 571; *State* v. *Bank,* 95 Tenn., 212, 31 S. W., 989.

It is said that the best test as to whether a former judgment is a bar in subsequent proceedings is to consider whether the same evidence would sustain both. If so, then the judgment in the former suit is *res adjudicata,* although the two actions are different. 15 R. C. L., p. 964.

Tested by this rule, the judgment in the juvenile court was clearly a bar to this proceeding in *habeas corpus.* It makes no difference that the form of action was different.

"On the question of *res judicata,* it is immaterial that the questions alleged to have been settled by a

139 Tenn.—34.

former adjudication were determined in a different kind of proceedings or a different form of action from that in which the estoppel is set up, the parties and the issues being the same." 23 Cyc., 1221.

We do not mean to say that a writ of *habeas corpus* will not lie, as affecting the custody of children determined by the juvenile court, in any case. If some time has elapsed since the order of the juvenile court in such a matter, or if the conditions of the parents or former custodian of the child has changed, so as to make it desirable that the child be returned to them, such matters can be properly set up, and the child recovered by *habeas corpus* procedure. To this effect see *Farnham* v. *Pierce,* 141 Mass., 203, 6 N. E., 830, 55 Am. Rep., 452; *Kennedy* v. *Meara,* 127 Ga., 68, 56 S. E., 243, 9 Ann. Cas., 396.

This is what this court held in *State* v. *Kilvington,* supra.

We are of opinion, however, that such a question, determined by the juvenile court, cannot be again litigated in a *habeas corpus* proceeding, in the courts of law and criminal courts, between the same parties, and on the same state of facts. The jurisdiction of the juvenile court, as stated before, is adequate, and its valid judgments are entitled to full consideration.

The writ of *habeas corpus* cannot be made to serve the purpose of an appeal or writ of error. *State ex rel.* v. *Taxing District,* 16 Lea (84 Tenn.), 240. Proceedings in the juvenile court must be reviewed in the

circuit court by *certiorari,* as pointed out in *State* v. *Bockman,* 201 S. W., 741, just decided.

It results that the judgment of the court of civil appeals will be reversed, and the judgment of the circuit court affirmed, and this petition will be dismissed, and the writ of *habeas corpus* discharged.