STATE FOR USE AND BENEFIT OF TENN. CHILDREN'S
HOME SOC. *et al. v.* HOLLINSWORTH *et al.*

(*Nashville,* December Term, 1951.)

Opinion filed February 9, 1952.

492

R. L. Taylor, Special Counsel, of Memphis, for petitioners.

C. P. J. Mooney, of Memphis, for Ann Atwood Hollingsworth.

Canada, Russell & Turner, and Vance Alexander, Jr., all of Memphis, for Union Planters Natl. Bank & Trust Co.

Mr. Justice Tomlinson delivered the opinion of the Court.

This suit was instituted at the instance of the State through special counsel in the name of Roy H. Beeler, Attorney General of Tennessee. It seeks a recovery from the Estate of Georgia Tann, deceased, her legatees and devisees of a very large sum of money which the bill alleges she misappropriated and which, so the bill alleges, was the property of two non profit General Welfare Domestic Corporations known as the Tennessee Children's Home Society and Tennessee Children's Home Society—Shelby County Division, with offices in Memphis.

Code Section 9336 et seq., authorizes the bringing of such a suit in the name of the State, and by Section 9339 it is provided that the suit is to be brought by the Attorney General for the District in which the suit is brought upon direction of the General Assembly or of the Governor, with the Attorney General of the State concurring.

This suit was not brought by the Attorney General for the Shelby County District. The defendants plead that fact in abatement of the suit. The Chancellor sustained this plea and ordered the dismissal of the bill unless the District Attorney General became a party complainant, within twenty-five days. That official never became a party to this suit. So the bill stood dismissed effective as of November 25, 1950. The record was filed in this court for writ of error on July 9, 1951 for the purpose of procuring a review of this decree.

Subsequent to the entry of the decree dismissing this suit, the Governor, with the Attorney General of the State concurring, directed the Attorney General for the Shelby County District to institute a suit to collect the above mentioned alleged misappropriation from the parties named in the first suit. Accordingly, the District Attorney General of Shelby County filed another suit. While there is some different arrangement of parties in this second suit, the purpose of the bill and the parties thereto are for all practical purposes the same, except that this suit is instituted in the name of the District Attorney General as provided by Code Section 9339.

The filing of this second suit was made known to this court by an exhibit to a motion in this court to dismiss the petition for writ of error in the first suit. The ground of the motion is that the institution of the second suit amounted in law to an abandonment of any right the complainant to the first suit may have had to a review of the decree entered in that suit.

This motion to dismiss the petition for writ of error must be overruled:—"If a writ of error be sued out in an earlier case subsequent to a second suit between the same parties for the same cause, the proper practice is to apply for an order in the second suit to stay proceedings therein until the writ of error is disposed of." *Sanford-Day Iron Works* v. *Enterprise Foundry & Machine Co.*, 138 Tenn. 437, 439, 198 S. W. 258.

It is said in the bill and in the brief of the State that the Children's Home Societies mentioned are charitable corporations operated for the purpose of assisting unfortunate and poor children of the State, and for the purpose of placing children for adoption. The name implies

that these corporations also maintain a home where such children may live.

According to the original bill, Georgia Tann was a director in, and general manager of, these two corporations, and in active charge. It is alleged that large sums of money ranging over a period of years were paid to her in her official capacity as funds given to one or the other of these corporations for the benefit of these children, and that she misappropriated this money.

The brief filed in support of the petition for writ of error properly concedes that the Attorney General of the State has no authority under the provisions of Code Sections 9336-9339 to maintain this suit for the collection of that money, and that the Chancery Court has no jurisdiction to entertain such a suit instituted under these code sections unless it be brought by the Attorney General for the District. It will not be necessary, therefore, to refer to any of our several cases so holding.

However, the contention made in behalf of the State is "that a common law action lies in the name of the Attorney General of the State of Tennessee, and that when sections 9336 et seq. of the Code were adopted that those sections did not repeal the common law action existing in the name of the Attorney General of the State".

The gravamen of petitioner's insistence is contained in the following statement taken from its brief:—"The beneficiaries of this particular charitable trust are such that none can come forward to bring suit as one of those designated as the object of the trust. It was necessary and altogether proper, therefore, that the Attorney General, representing the State of Tennessee and this particular class of beneficiaries, commence the suit to recover funds misappropriated from this charitable trust", and

that the Attorney General has such authority under the common law.

References to, and quotations from, text and decisions of other jurisdictions are made in support of this insistence. They seem to strongly support this insistence made by the State. However, certain principles long since announced and adhered to by the decisions of this Court seem to conclusively settle the question, in so far as this jurisdiction is concerned, contrary to the insistence of the State.

In 1844 Judge Turley wrote the majority opinion of the court in *Green* v. *Allen,* 24 Tenn. 170. In *Ewell* v. *Sneed,* 136 Tenn. 602, 606, 191 S. W. 131, 5 A. L. R. 303, Judge Green, referring to *Green* v. *Allen,* supra, said that this opinion "has long been regarded by the profession as a classic in the law, and the fundamental rules there laid down have never been modified or consciously departed from by this Court".

In *Green* v. *Allen,* supra, Judge Turley makes a very detailed and instructive review of the law of England with reference to charitable trusts at the time of the Revolutionary War. After pointing out the development of the law on this subject as the result of the struggle between the Church, on the one hand, and the King or Parliament, on the other, with reference to the control of lands and properties supposedly dedicated to charities, religious or otherwise, the opinion then states that the King as "parens patriae" was empowered through his Attorney General to maintain such a suit as the one involved in the case at bar. It is then observed that the purpose of the laws of England on this subject was inconsistent with our Bill of Rights, and that with "the successful event of the Revolution,—the whole system out of which this common-law power arose was thorough-

ly prostrated'', 24 Tenn. at page 206, because ''we have no parens patriae. We have no attorney general representing the executive who can, as such give information by bill for the establishing and enforcing of trusts for charitable purposes''. 24 Tenn. at page 207.

In *Green* v. *Allen* the very insistence made in the case at bar is discussed and determined as follows: '' 'And in the case of *Morrell* v. *Lawson,* 5 Vin. Abr. 500, Lord Chancellor Parker says that, when a bill is brought to establish a charity given by will to persons uncertain, and incapable of suing or being sued, the suit must be in the name of the attorney general ex necessitate rei; because there are no certain persons entitled to it who can sue in their own names.' But the vice-chancellor, in continuation, observes: 'There is ample authority in our own country to establish that the States now represent that particular branch of the royal power as parens patriae.' To this portion of the opinion I have not been able to yield my assent;—because I am satisfied that no such jurisdiction has been entrusted to us, and that we have no system by means of which a proper exercise of it could be ensured, if it had.'' 24 Tenn. at page 210.

The next year after the opinion in *Green* v. *Allen* was rendered our General Assembly enacted the statute now carried in Code Sections 9336-9339 whereby a suit of this character may be maintained under the conditions stated in these code sections by the Attorney General for the District where the suit is to be brought. It is reasonable to conclude that the Legislature acted so soon after *Green* v. *Allen* because it was then recognized that there was no common law authority in this State for a suit of this character.

The principle announced in *Green* v. *Allen* was reiterated in *Oakley* v. *Long*, 29 Tenn. 254, 258, wherein

498

it was held:—''Nor is there any department of our government which has the right to exercise the duties and powers which belong, in England, to the prerogatives of the crown, unless those duties and powers have been conferred by statute''.

*Ewell* v. *Sneed,* supra, 136 Tenn. at page 610, 191 S. W. at page 132, 5 A. L. R. 303, reaffirms the holding in the two cases mentioned with the statement that ''the functions of the king as parens patriae, with respect to the administration of charities, have not been devolved upon any officer or department of government in Tennessee.''

■ It necessarily follows from the principles announced in our cases above mentioned that the Attorney General of this State has no common law authority to maintain this suit. Hence, the Chancellor did not err in sustaining the defendants' plea in abatement and in dismissing this suit by reason of the failure of the District Attorney to become a party complainant and prosecute the suit.

On January 29 the court, over the objection of the State, entered an order ''modifying'' the decree which became final on November 25 so as to assess costs of the suit against the State. This was done over the objection of counsel representing the State. The decree which became final on November 25 did not adjudge costs.

It is insisted here that the court (1) was without authority to modify its decree, more than thirty days having elapsed, and (2) is without authority to assess any costs against the State of Tennessee. The contention is that the costs should have been assessed, if at all, against the Tennessee Children's Home Societies.

■■ Court costs follow as a matter of course the entry of every final decree. The failure, therefore, to

499

adjudge such costs in such final decree is a mistake apparent on the face of the record. By Code Section 8722 the Court is authorized to correct every mistake apparent on the face of the record ''at any term after final judgment''. The subsequent decree adjudging costs was, therefore, authorized.

We hardly see how this cost can be legally assessed against the two Tennessee Children's Home Societies. These corporations did not authorize the bringing of this suit. Apparently, the State of Tennessee through its attorney general purported to authorize it. It would seem, therefore, to be equitable to adjudge these costs against the State. See also Code Section 9177.

Some question is made as to the authority to assess the State with the State Litigation Tax or the State Judges Retirement Tax, each in the amount of $2.50. It is not disclosed by the record whether the Clerk & Master assessed the State with these two items of costs. If so, the proper manner, we think, to correct that is by motion to re-tax. The decree of the Chancellor will be affirmed with the costs of this appeal adjudged against the State.