Daniel *v.* Fain.

5L 319
16L 667
4pi 638

H. E. DANIEL, Adm'r, *v.* S. N. FAIN and S. N. FAIN *v.* UNION PRESBYTERY *et al.*

1. ASSIGNMENT. *Effect of.* An assignment for value by a person of all his interest in that part of his father's estate left by his will to his widow, amounting to a sum specified, then in the hands of a trustee for the benefit of the widow for life, and which is to revert to the assignor at her demise, will pass all the interest of the assignor in the fund either as legatee or distributee.

2. WILL. *Bequest to an unincorporated association void.* A bequest of a fund to be put into the hands of a trustee to be selected by the Union Presbytery, a religious association not incorporated at the death of the testator, to be employed by the trustee to assist some indigent young man in a preparatory course for the sacred ministry, is void.

FROM UNION.

Appeal from the Chancery Court at Maynardsville. W. B. STALEY, Ch.

MCFARLAND & DICKSON and J. W. YOE for complainant.

J. M. MEEK for defendant.

Daniel *v.* Fain.

COOPER, J., delivered the opinion of the court.

Alexander Blackburn died about 1845, leaving a widow, Harriet C., who subsequently intermarried with Henry H. Peck, and an only son, Andrew Blackburn, then an infant. By his will, the deceased in effect divided his estate between his widow and his son, with a contingent provision for an alleged charitable purpose attached to each moiety. The contingency never happened as to the moiety of the son, the only contest being over the widow's moiety. This contest is between the assignee of the son and the claimant of the charity. Andrew Blackburn, after he came of age, sold and conveyed to Henry H. Peck " all my interest in that part of the estate of my father, Alexander Blackburn, deceased, left by his will to my stepmother, Harriet Blackburn, now Harriet Peck, amounting to between $1,000 and $1,200, now in the hands of a trustee for the benefit of said Harriet Peck during her life, and which is to revert to me at her demise." Andrew Blackburn died about 1857. Harriet Peck died in 1877, her husband having died before her. H. E. Daniel is the administrator of Henry H. Peck, and filed the original bill against S. N. Fain, the trustee of the fund, claiming the fund under the above assignment. Fain, as trustee, filed the other bill, as a bill of interpleader, to bring all the claimants of the fund before the court. The chancellor decided in favor of the charity, and against Peck's administrator. He appealed.

After directing his farm to be sold and the pro-

ceeds to be equally divided between his wife and son, and bequeathing to each certain slaves, the testator by his will provides: "Should my son decease before his mother, in that case it is my will, if he dies under age, that all my estate left him by this will should be put into the hands of a trustee who is to be selected by the Union Presbytery, or whatever Presbytery may embrace Jefferson county, to be employed by said trustee to assist some indigent young man in a preparatory course for the sacred ministry. Should my son live to maturity, the estate left him by this will is to be his absolutely." After some small specific bequests, and providing for the sale of the residue of his estate, and the equal division of the proceeds between the wife and son, the will proceeds thus: "It is my will that the portion of my estate falling to my wife by this will be placed in the hands of a trustee, whose duty it is to use the interest only for her support, the interest to be collected annually, and in no case and at no time during her natural life is the principal to be touched. At her death, my negro girl Matilda is to go free, and the fund which I leave my wife, should she outlive my son, is to be placed under Union Presbytery as above, with the exceptions as above, but should my son Andrew live to maturity, and outlive my wife, his mother, it is my will that he inherit all which I leave to his mother. All the negroes which I leave, and he then inherits, with their issue, to be his, but should the said Andrew die without issue, in that case the negroes I leave, with their issue if any, are to be free, and

the balance of his estate to be at his own disposal." The testator then expresses the wish that Daniel Meek will act as trustee for the time being, "and when it becomes · impracticable for him to act, that he, with my wife, select another, who shall give security for the faithful performance of his trust." He then appoints Meek and the widow to execute the will, expressing a wish that his son, on coming of age, should also become one of the executors.

The son of the testator having lived to maturity, it is conceded that he took his moiety of the estate absolutely. The widow's share of the proceeds of the realty and residue of the estate amounted to the sum of about $1,000, being the same fund mentioned in the sale by Andrew Blackburn to Henry H. Peck. As requested by the will, Daniel Meek became trustee of the fund. Afterwards, John R. Branner became trustee, and subsequently S. N. Fain.

An ingenious argument has been submitted, based upon some parts of the language of the will above cited, and especially upon the words "with the exceptions above," which follow the provision that the fund left the wife should, in the contingency mentioned, be placed under the Union Presbytery "as above," that the testator only intended the bequest over to the Presbytery to take effect if the son died before arriving at maturity. The clause principally relied on refers to the small specific bequests, such as a family bible and other articles given the wife, and to the bequest of slaves for whose freedom the testator provides. The testator clearly intended that the fund

Daniel *v.* Fain.

·derived from the sale of the land and the residue of his estate, and which was to go into the hands of a trustee for the benefit of his wife during life, should go over for the purposes specified in the event the mother outlived the son. He makes this intention certain by first expressly providing that the fund should ·be placed under the Union Presbytery should the wife survive the son, and then adding that should the son live to maturity "and outlive" the wife, he should ·inherit all that he had left to the wife.

The sale and assignment by Andrew Blackburn to Henry H. Peck was of all his interest in this particular trust fund. They passed whatever interest he had therein, whether as legatee under the will, or as distributee. There is no reservation, and the intent to convey his entire interest is clear. The complainant Daniel is, therefore, as administrator of Peck, entitled to the fund unless the devise over is good.

At the death of the testator in 1845, there was a Union Presbytery of Jefferson county, embracing that county, and this Presbytery with like limits has continued to exist to the present time. It is said to have been incorporated by the chancery court in 1871, and the corporators, or the persons claiming to be such, are defendants to the trustee's bill, and claim the fund in controversy. In 1865 or 1866, a new Presbytery, called the Holston Presbytery, was organized for the county of Jefferson. One of these Presbyteries is attached to the Presbyterian church of the North, the other to the Presbyterian church of the South. The Union Presbytery was not incorporated

at the time of the testator's death, nor is any evidence of its incorporation at any time introduced in the record.

The provision of the testator's will, in the contingency which has happened, is that the fund in controversy shall "be put into the hands of a trustee who is to be selected · by the Union Presbytery, or whatever Presbytery may embrace Jefferson county, to be employed by said trustee to assist some indigent young man in a preparatory course for the sacred ministry." A bequest for the education of indigent young men for the ministry would be for a charitable use and valid. *Dickson* v. *Montgomery,* 1 Swan, 348, 368. The doubt is whether the provisions of the will sufficiently conform to the requirements of the law to bring the trust under the extraordinary jurisdiction of the court of chancery as settled in this State. To render a charity valid, it has often been said by this court, and repeated at the present term, it must be in favor of a person having sufficient capacity to take as devisee or donee at the death of the testator, or if it be not to such person, it must be definite in its object, and to be executed and regulated by trustees. *Green* v. *Allen,* 5 Hum., 170. A corporation, authorized to receive the gift, is a person within the rule, but a voluntary unincorporated association is not. *Cobb* v. *Denton,* 6 Baxt., 235; *Frierson* v. *Presbyterian Church,* 7 Heis., 683. The gift may be to trustees for the benefit of an incorporated institution or association. 6 Baxt., 235; *Gass* v. *Ross,* 3 Sneed, 211; *Franklin* v. *Armfield,* 2 Sneed, 306. If

the gift to be a voluntary unincorporated association, a provision for the appointment by the association of an agent to manage the property, receive the income, and appropriate it for the charitable purpose, would not, it seems, validate the devise, because, the court said, the charity must stand or fall as it was found to exist at the death of the testator. *White* v. *Hale,* 2 Cold., 77. The devise in that case was of land to the Baptist Nolachucky Association, to be appropriated to the support of old Baptist ministers, of the same faith and order of the association, and provided that the association should appoint some discreet member of their own body, who shall be authorized to rent and receive rents, and apply the same for the purposes directed; and whenever the agent was found incapable, the association were to appoint another, " which power," says the testator, " I give into the hands of said association forever." A similar conclusion was reached at this term in the case of *Reeves* v. *Reeves,* where the gift was to an unincorporated religious association, the property to be managed by trustees to be appointed by the association. These decisions are conclusive upon the case before us.

The chancellor's decree must be reversed, and a decree rendered here in favor of the original complainant. The costs of the cause will be paid out of the fund in controversy.