\*JOHNSON *v.* JOHNSON.

*(Jackson.* May 16, 1893.)

1. WILL. *Effect of devise of rents or income of property.*

A bequest of the rents or income of property operates to pass the title of the property itself.

Cases cited and approved : Polk *v.* Faris, 9 Yer., 241 ; Morgan *v.* Pope, 7 Cold., 547 ; Davis *v.* Williams, 85 Tenn., 648 ; Spofford *v.* Martin College, Oral Opinion, 1889.

2. CHARITABLE TRUST. *Designation of trustee.*

A devise of land in trust for a charitable purpose, to the testator's wife and daughter, with power to nominate and elect their successors and associates from his descendants, who are also authorized to elect associates and successors, and providing that, in case there shall at any time not be as many as two of his descendants willing to take the trust, it shall revert to a designated board, sufficiently provides for the trustees.

Cases cited and approved: Cobb *v.* Denton, 6 Bax., 236 ; Gass *v.* Ross, 3 Sneed, 211 ; Dickson *v.* Montgomery, 1 Swan, 347 ; Franklin *v.* Armfield, 2 Sneed, 346 ; State *v.* Smith, 16 Lea, 665 ; Heiskell *v.* Chickasaw Lodge, 87 Tenn., 668 ; Frierson *v.* The Church, 7 Heis., 683 ; 2 How., 126 ; 3 Pet., 99 ; 95 U. S., 303 ; 107 U. S., 172.

3. SAME. *Designation of purposes of trust.*

A devise of land in trust for some charitable purpose, with a preference for something of an educational nature, and a hope that a grand female college may at some time be constructed thereon, but giving the trustees absolute power to divert the property to any other charitable purpose, is too indefinite to be enforced.

Cases cited and approved: State *v.* Smith, 16 Lea, 670 ; Dickson *v.* Montgomery, 1 Swan, 348 ; Gass *v.* Ross, 3 Sneed, 211 ; State, *ex rel.,*

---

\*For a very extensive note on the effect of a secret trust or promise to a testator upon a testamentary gift, see *Gore* v. *Clarke* (S. C.), 20 L. R. A., 465, while the effect of subsequent incorporation to make valid a gift to an unincorporated association is presented in a note to *Longheed* v. *Dykeman's Baptist Church and Society* (N. Y.), 14 L. R. A., 410.—REPORTER.

*v.* Martin College, Oral Opinion, January, 1888; Reeves *v.* Reeves, 5 Lea, 644; Rhodes *v.* Rhodes, 88 Tenn., 637; 125 N. Y., 569; 130 N. Y., 29 (S. C., 27 Am. St. Rep., 487, and 14 L. R. A., 30).

FROM SHELBY.

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

H. C. WARRINER for Complainants.

SMITH & TREZEVANT for Defendants.

WILKES, J. This is a bill to construe the several items of the will of John Cummings Johnson, deceased.

The testator died July 25, 1892, leaving a widow, Complainant Mary Mildred Johnson, and seven children by a former marriage, and possessed of quite a large estate of both realty and personalty.

The will was written by the testator, and is somewhat inartificially drawn. It consists of twenty-six items, and purports to convey and dispose of all the property of the testator.

The several items submitted to the Chancellor were construed by him, and specific directions were entered in the decree, and a written opinion was filed by him in the Court below.

The cause has been brought to this Court upon writ of error, and it is assigned as error that the Chancellor erred in his construction of the eighth, seventeenth, and twenty-fourth items of the will.

We have carefully considered these items and the assignments, and are of opinion that there is no error in the construction placed by the Chancellor upon the eighth and twenty-fourth items of the will, and his opinion and decree as to these items is adopted by this Court, and need not be more specifically set out.

The main controversy is in regard to the proper construction of the seventeenth item, which is as follows:

"17. I give and bequeath to my wife, Mary Mildred Johnson, and to my daughter, Lillie W. Johnson, jointly, my 'home lot' of three acres, No. 11, fronting on Poplar Street, east of Dunlap, to hold in trust as below cited, with power to lease and sell the same under the terms of this will, and to nominate and elect their successors and other associates in this trust, from my descendants or from their Protestant husbands or wives, not exceeding five, who may, in turn, elect their associates and successors from my descendants. If at any time in the future there should not be as many as two of my descendants able and willing to take charge of this trust, then it shall revert to a board, consisting of the elders of the several Presbyterian Churches of the city of Memphis, who shall, with the assistance of the Presbyterian

36—8 p

pastors, nominate from the bankers or business men of their body an executive committee of five, who, with my descendants, shall have full power and control to manage the trust so it will be productive of most good to the greatest number. It has been my desire to see a grand female college located on this lot, and I hope it may yet be accomplished. If the way be clear to that end, the income may be appropriated in that direction; but if not, then it is my desire and wish that the main income from this property, less the amount needed for repairs, taxes, and insurance, shall be used for some charitable purpose, preference always to be given to something of an educational nature, although permissible to appropriate the income in any way it may seem to the trustees to be necessary and most desirable, as they may elect. The property is never to be mortgaged, nor is the income to be pledged for more than three months in advance, and no sale of it shall be made until five years after the termination of the present lease, when it may be sold for re-investment for some scholastic or charitable purpose."

The question presented is whether this is a valid devise to a charitable purpose, and such as can be upheld under our authorities.

The complainants, who are the executors of the testator's will, are also made, by this item, the original trustees of this charity, and in their bill they allege that the item makes a valid devise to

them as trustees of the property in fee, the net rents and income to be applied to charitable purposes, which are rendered sufficiently definite to be valid.

The adult defendants answer that they have no desire to obstruct the benevolent and charitable intentions of their father if they can be legally carried out, and they join in the request to the Court to construe the item, and determine, as against the minor defendant and devisee, if effect can be given to the devise as a valid charity.

We are of opinion that if the devise is valid, then the item passes the fee in the property for the purposes indicated, the net income from which is to be expended and appropriated by the trustees. While there is no specific devise of the property, yet a devise of the rents and profits and income is in effect a devise of the property itself. *Polk* v. *Faris*, 9 Yer., 241; *Morgan* v. *Pope*, 7 Cold., 547; *Davis* v. *Williams*, 1 Pickle, 648; *Pilcher* v. *McHenry*, 14 Lea, 88; 1 Jarman on Wills, 152, note; 3 Washburn on Real Estate, 529, 530; *O. M. Spofford, Executrix*, v. *Martin Female College*, Oral Opinion, January, 1889.

In the case last mentioned, Thomas Martin, of Giles County, had set apart $30,000 in bonds of the State of Tennessee, the interest to be applied to the founding and operating a female school at Pulaski, Tennessee. After the school had been founded, and successfully operated for a number of years, Mrs. O. M. Spofford, his only daughter and

residuary legatee, filed a bill, claiming that only the interest upon the bonds was devoted by the will of her father to the school, and that, when the bonds matured and the interest coupons had all been clipped and exhausted, then the bonds or corpus of the fund would revert to her as residuary legatee under the will. The Court below, as well as this Court, held that the gift of the interest of the bonds carried the bonds themselves, and. the fund could not be diverted from the charity.

But the question in this case recurs: Is the devise, as made in the seventeenth item of the will, a .valid devise for charitable uses?

Charitable uses are favored in Courts. of Equity, and will be supported when the trust would fail for uncertainty were it not for a charity. *Dickson* v. *Montgomery*, 1 Swan, 348; *Heiskell* v. *Chickasaw Lodge*, 3 Pickle, 668.

This Court has no disposition to abridge this rule, or recede from it in any. way.

A charity will always be upheld, where it is created in favor of a person having sufficient capacity to take as donee; or, if it be not direct to such person, where it is definite in its object, lawful in its creation, and to be executed by trustees. *Franklin* v. *Armfield*, 2 Sneed, 305; *Gass* v. *Ross*, 3 Sneed, 211; *Cobb* v. *Denton*, 6 Bax., 235; *Frierson* v. *The Church*, 7 Heis., 683; *Dickson* v. *Montgomery*, 1 Swan, 348.

There is a broad distinction between a gift direct to a charity or charitable institution already

established, and a gift to a trustee to be by him applied to a charity. In the first case, the Court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but in the latter case the Court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity. 2 Perry on Trusts, Sec. 719.

Hence, there must be either—

1. A trustee capable of taking, and a definite, legal purpose declared.

2. A trust so definite and well defined that it can be enforced and executed, if necessary, by a Court of Chancery.

The Chancellor was of opinion that provisions of the will providing for trustees of this charity were sufficient, and in this we think he is well sustained by authority.

An executor may act as such trustee. *Cobb* v. *Denton*, 6 Bax., 236; *Gass* v. *Ross*, 3 Sneed, 211.

Or third persons may be such trustees. *Dickson* v. *Montgomery*, 1 Swan, 347; *Franklin* v. *Armfield*, 2 Sneed, 346; *State* v. *Smith*, 16 Lea, 665.

Or the Court may appoint a trustee if the trusts are definite and valid. *State* v. *Smith*, 16 Lea, 665; *Vidal* v. *Girard*, 2 Howard, 126, 128; Perry on Trusts, Sec. 722.

Or a corporation to be created after the death of the testator may be such trustee. *Inglis* v.

Sallon Mug Harbor, 3 Peters, 99; Ould v. Washington Hospital, 95 U. S., 303; Russell v. Allen, 107 U. S., 172; State, ex rel. Duncan, v. Martin College, Oral Opinion.

The real difficulty in the devise is the uncertainty of the beneficiary and the extreme discretion and power vested in the trustees.

Unquestionably, under the English law and the law relating to charitable trusts prevailing in many States of our Union which have adopted the doctrines of the English law, this trust would be good. The doctrines of parens patriæ and cy pres, as recognized in the English law, have never obtained in Tennessee. Only those powers which in England were exercised by the Chancellor by virtue of his extraordinary as distinguished from his specially delegated jurisdiction, exist in our Chancery Court. Green v. Allen, 5 Hum., 170; Dickson v. Montgomery, 1 Swan, 348.

Nevertheless, the Courts will sustain a charity when the plan and scheme for its management is left to the discretion of trustees, and will, if necessary, formulate a scheme for the conduct of the charity, or uphold the plans and schemes which the trustees, in their discretion, may adopt and formulate, and prevent any interference therewith. The State v. Smith, 16 Lea, 670; Perry on Trusts, Secs. 744, 700; Dickson v. Montgomery, 1 Swan, 348; Gass v. Ross, 3 Sneed, 346; State, ex rel. T. J. Duncan, v. Martin Female College, Oral Opinion, January, 1888.

In the case last named a bill was filed in the name of the State of Tennessee, on the relation of the Rev. T. J. Duncan, a Presiding Elder in the Methodist Episcopal Church, South, against the trustees of Martin Female College, an educational charity in successful operation at Pulaski, Tenn., seeking to set aside the charter of the college, remove its trustees from office, and enjoin the operation of the school, because it had been founded by Thomas Martin, a prominent Methodist layman, and for years had been recognized and patronized by the Tennessee Conference, and yet the trustees had not conducted it as a sectarian or denominational school, but had placed in charge of it principals of different tenets of faith. The Court held that, in the absence of specific instructions in the will of Thomas Martin, the trustees had the power and discretion to place in charge of it such persons as they might deem best, and their discretion could not be controlled by any other persons or organizations.

In the case at bar we have a specific and definite property designated and set apart by the testator, and conveyed to trustees whose identity is fixed and whose succession is provided for. It is apparent also that it was the earnest desire of the testator to devote this property to charitable purposes and to none other, the principal or corpus to be preserved and the income to be consumed for the purposes of the charity, and in such man-

ner as might be productive of the greatest good to the greatest number.

We think it is also evident that the testator had a primary and a secondary object, the former being to found a charity, and the latter being that (as a matter of preference) the charity should be educational. It is evident also that the testator had the utmost confidence in the trustees selected—to wit, his wife and daughter; and he gave to them unlimited power and discretion, not only as to the kind or character of the charity, but also as to the plan for its administration.

In all cases of charities founded by wills, broad discretion and ample powers must necessarily be conferred upon the trustees, inasmuch as the testator is attempting to provide for contingencies which will arise after his own death, but at the same time this power and discretion must not go to such extent as that the objects to which the fund is to be devoted, and the kind and character of the charity, will depend not upon the will and directions of the testator, but upon the choice and preference of the trustee.

In *Read* v. *Williams*, 125 N. Y., 569, it is said: "That cannot well be said to be a disposition by the testator's will with which the testator has had nothing to do except to create an authority in another to dispose of the property according to the will of the donees of the power."

The important question which primarily arises is whether the object of the trust, and who are

to be its beneficiaries, depends upon the will of the testator or the choice of the trustee, and is there any one who could demand of the trustee the benefits of the trust because it was made for his benefit, and others of his class, and, if refused, could compel its performance?

In the case of *Tilden* v. *Green*, 130 N. Y., 29, also reported in American State Rep., Vol. 27, 487, and in 14 Lawyers' Reports Annotated, page 30, the devise in trust under the thirty-fifth and thirty-ninth items of the will of Samuel J. Tilden, was passed upon.

Under these items, property was devised to trustees to be held for two lives in being, with requests that they procure an act of incorporation, to be known as the Tilden Trust, with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as the trustees might more particularly designate, and authorized them to convey such property to such corporation when formed, and declared that in case it was not formed, or, if from any cause or reason they should deem it inexpedient to convey to such corporation, then they were directed to apply it to the use of such charitable educational or scientific purposes as in their judgment would render such property most widely and substantially beneficial to the interests of mankind.

It was said in that case the devise does not designate any beneficiary, but, on the contrary, leaves

it to the discretion of the trustees whether or not they will or will not convey to the corporation. Hence there is not, and cannot be, any person, natural or artificial, who is or will become entitled to the execution of the trust in his favor. The conclusion of the Court was that the bequest could not be maintained, because of the complete discretion vested in the trustees whether they would give it or not to the beneficiary suggested. A charter was actually obtained, and the property was in fact conveyed by the trustees to the corporation thus created, before the suit was brought, but the Court held that the invalidity of the trust could not be cured by any thing done by the trustees toward its execution.

It is also held, in that case that a trust without a beneficiary who can claim its enforcement, is void, and this objection is not obviated by the existence in the trustees of a power to select a beneficiary, unless the class of persons in whose favor the power may be exercised has been designated with such certainty that the Courts can ascertain who were the objects of the power, and when the beneficiary is not designated in the will, such beneficiary cannot be designated by the trustees in pursuance of a discretion vested in them by the will. It is further said, no trust is enforceable unless there is some person or class of persons who have a right to a part or all of the designated fund, and can demand its conveyance to them, and, in

case of refusal, can sue the trustees in equity and compel compliance with the demand.

In the case at bar the power and discretion vested in the trustees is more extensive than in the Tilden will case. Here there is a mere preference expressed for an educational charity by the testator, and a hope that a grand female college may at some time be located on the lot; but absolute power is given to the trustees, at their discretion, to divert the property to any other charitable purpose, even over the preference of the testator himself as expressed in his will. Under this power and discretion, the trustees might at will devote the property to any charity, whether educational, religious, or eleemosynary, and they could at will change and alter the direction in which the charity should flow.

Under this broad discretion and power, the trustees might, instead of a female school, establish a public library or a lecture-room, or a church or woman's home, or any other charity, and if either of these should be selected by these trustees as the object of this devise, certainly it could not be said they had exceeded their powers and discretion, and if either should be established, it would not be because of directions in the will of the testator, but from choice and preference on the part of the trustees. We are constrained to hold that such a charitable devise cannot be enforced, and is invalid. *Reeves* v. *Reeves,* 5 Lea, 644; *Rhodes* v. *Rhodes,* 4 Pickle, 637.

The Chancellor decreed that the devise must fail, and the property must pass under the nineteenth clause, which he construed to be the residuary clause of the will. As no point or contest is made upon this part of his decree, we are content to affirm his holding on this point. See also *Reeves* v. *Reeves,* 5 Lea, 650.

The decree of the Chancellor is in all things confirmed, and the costs will be paid by complainants out of the estate.