W. E. HOWELL, Admr. v. MRS. KATE STROUD, et al.

Eastern Section. November 23, 1925.

No petition for Writ of Certiorari was filed.

1. **Appeal and error. Testimony not objected to not open to review on appeal.**
Where the record does not show testimony was objected to, it is not open to review on appeal. ·

2. **Trusts. Charitable trusts. Bequest to unincorporated organization either directly or as trustee void because no legal capacity to take.**
In an action to construe a will where bequest was made to deacons of a church, the church being unincorporated, held the bequest must fail because no person could in legal contemplation be regarded as existing with legal capacity to take.

3. **Trusts. Charitable trusts. Bequests held too indefinite.**
A bequest to Deacons of a church "to be by them used for charity to the poor regardless of denomination" held void because too indefinite.

4. **Trusts. Charitable trusts. Act 1917 Chap. 137 does not eliminate necessity of charitable trusts being definite in objects.**
Act of 1917, Chapter 137 does not purport to eliminate the necessity of charitable trusts or bequests being definite in their objects, and does not attempt to enact anything with reference to the objects of such trusts, and a trust indefinite in its objects must be held void.

5. **Trusts. Bequests held to make executor trustee though he was not so named.**
A provision in a will which request the executor of the will to hold the residue of the estate for 10 years and use the income to educate some boy or girl held to make the executor trustee to execute the trust though he was not named as trustee.

6. **Trusts. Charitable trust for education of boy or girl held sufficiently definite.**
Where the will provided "I direct my executor to use the interest on the residue of my estate to assist in educating some bright boy or girl of indigent or needy circumstances" held not void for indefiniteness.

7. **Appeal and error. Where issue is made in trial court and the decision appealed from, the question is before the appellate court.**
In an action to construe a will where two sections of the will were in issue and defendant deacons of a church were directly interested in only one but appealed from the decision on both and the appeal was allowed held both sections of the will were properly before appellate court.

8. **Costs. Parties brought into court in action to construe will not liable for costs.**
In an action to construe will where plaintiff brought in certain beneficiaries who in good faith attempted to uphold intention of testator to establish a charitable trust, held they should not be taxed with any costs although trust held void.

Error to Chancery Court, Hamblen County; Hon. M. H. Gamble, Chancellor.

Affirmed in part, reversed in part and remanded.

Rufus M. Hickey, of Morristown, for complainant.

Chas. S. Stephens, of Morristown, and Bowen & Bowen, of Knoxville, for defendant.

THOMPSON, J.  Mr. D. W. C. Davis, who lived at Morristown, Tennessee, died on March 10, 1920.  He was 85 years old, was a religious man, and a member of the First Baptist Church of Morristown.  He left a will, as follows:

First:  Directing that his just debts and funeral expenses be paid by his executor.

Second:, That his body be buried by the side of his deceased daughter, Kate K. Davis, and that a tablet in her monument be removed, relettered by a company at Bridgeport, Connecticut, so as to state the date of his birth and death, and that the tablet then be replaced in the monument.

Third:  That all his goods and chattels be sold by the executor. and that the proceeds be placed into the general fund of his estate.

Fourth:  "I give, bequeath and devise to Lelia Davis, wife of Fred Davis, one thousand ($1000) dollars to be paid her by my executor regardless of any sum or sums for which I am or may be security for her or for her husband, the said Fred Davis."

Fifth:  "I give, bequeath and devise to Lyda Gratz, wife of Joe Gratz, one thousand ($1000) dollars to be paid to her by my executor, unless I buy a cottage house and have same deeded to her to take effect at my death."

Sixth:  "For ten years after my decease, I direct my executor to use the interest on the residue of my estate to assist in educating some bright boy or girl of indigent or needy circumstances."

Seventh:  "Then, after all this is done, I direct, bequeath, and devise that my executor pay over all the rest and residue of my estate to the Deacons of the First Babtist Church of Morristown, Tennessee, to be by them used for charity to the poor regardless of denomination."

Eighth:  "I nominate and appoint J. G. Templin, executor of this my last will and testament."

Mr. J. G. Templin appears to be the county court clerk of Hamblen county, and we presume from the record that he did not desire to act as executor.  At any rate, the will was probated, and on March 13, 1920, Mr. W. E. Howell, was appointed by the county court as administrator with the will annexed.

On May 21, 1921, Mr. Howell, filed the bill in the instant case against the next of kin and heirs at law of Mr. D. W. C. Davis, deceased, the several Deacons of the First Baptist Church of Morristown, Mrs. Lelia Davis and husband; Mr. J. C. Freels, and Mr. A. G. Stuart.

The bill, among other things, alleged that Mrs. Lelia Davis, an alleged creditor of the estate who had filed a claim for $1207.80 for services claimed to have been rendered to Mr. D. W. C. Davis during his lifetime, was the wife of a nephew of Mr. D. W. C. Davis, and that in the will she had been bequeathed the sum of $1000. The court was then asked to determine the effect of this bequest upon her claim for services, and also the effect thereon, of her relationship to Mr. Davis, deceased.

It was also alleged that J. C. Freels, had filed a claim against the estate in the sum of $139.86 for repairs made on a storehouse owned by Mr. D. W. C. Davis. It seems that Mr. Freels made the repairs while he had the building leased under a contract which contained no provision for repairs, but that he bought the building from Mr. Davis just before his death. The bill, therefore, prayed that the validity of this claim be determined by the court.

The bill further alleged that just before his death, Mr. Davis executed a certain paper writing wherein he purported to give to A. G. Stuart certain Liberty Bonds in settlement of personal services rendered, but that these bonds had not been delivered to Mr. Stuart during the lifetime of Mr. Davis, and the bill prayed for an adjudication covering the validity of the paper writing, and a decree authorizing a delivery of said bonds to Mr. Stuart.

The bill then quoted the sixth clause of the will and alleged as follows:

"Your complainant shows to the court that he is in doubt as to the validity of the sixth clause of said will, which provides that the executor shall use the interest on the residue of the funds in his hands for a period of ten years to assist in educating some bright boy or girl of indigent or needy circumstances. The executor in the will was not made trustee for this purpose. The will vests full discretion in the executor as to the selection of the boy or girl. No particular locality is specified from which the boy or girl shall be selected, nor is the kind, manner or extent of education stated, and your complainant is advised that there is serious question as to the validity of this clause; that it is open to the objection of indefiniteness, and, therefore, void, and your complainant is advised that it is not safe for him to continue the execution of said trust without first obtaining from this court a construction of said clause of said will, and an adjudication as to its validity."

It was accordingly prayed: "That the court construe and determine the validity of the sixth clause of said will, and particularily whether or not said clause is valid and binding."

The bill then quoted the seventh clause of the will and alleged as follows:

"Your complainant is advised that the seventh clause of the will is void for the following reasons: (1) the First Baptist Church of Morristown is an unincorporated religious institution and the deacons of said church are an unincorporated body, and (2) the bequest is to the deacons to be used by them for charity to the poor, regardless of denomination, and the will does not specify the kind or character of charity for which the fund shall be used, and is not limited geographically, and for this reason is so indefinite as to be incapable of execution. Complainant, therefore, will ask that the seventh clause of the will be declared absolutely void, and that the powers, duties and obligations of your complainant with respect to the disposition of said fund, and particularly if the court should hold that the seventh clause of said will is valid, be fixed and determined by decree of this court.

"While it is true that it will be ten years before the funds will be paid over to the deacons of the said First Baptist Church, in the event this clause is valid, complainant is advised that inasmuch as he must now obtain from the court a construction of the sixth clause of said will, he has the right and it is entirely proper to have the seventh clause construed."

It was accordingly prayed: "That the court decree that the seventh clause of said will is void for indefiniteness, and further because that said First Baptist Church of Morristown is an unincorporated institution, and said deacons of the First Baptist Church are an unincorporated institution, but if the court should be of the opinion that said bequest is valid, that same be construed and proper decrees entered for its execution."

The bill also prayed that the administration of the estate be transferred from the county court to the chancery court; that all necessary steps be taken by decree of court for the full and complete administration of the estate, etc.

Mrs. Lelia Davis, Mr. Freels and Mr. Stuart seem to have filed answers, and the questions involved in the case as to them, appear to have been adjudicated and determined in a manner satisfactory to all parties.

Two of the heirs, i. e. W. B. Davis and Fred R. Davis, filed answers in which they each state as follows:

"This defendant further admits that the sixth and seventh clauses or items of the will of said deceased are correctly copied in the second paragraph of the bill. He also admits that the construction placed by the administrator upon said sixth and seventh clauses or items is correct. This defendant, however, is advised and will contend that the sixth clause or item is absolutely void on account of its being indefinite, and for other sufficient reasons,

and he agrees with the administrator that the seventh clause or item is void and of no effect.

"It is the position and contention of this defendant that that part of the estate of D. W. C. Davis, deceased, not consumed in the payment of debts and costs of administration and of the two legacies mentioned in said will, become under the law of distribution the property of heirs at law of the said D. W. C. Davis, deceased, in accordance with their rights and interests therein under the law of distributation of Tennessee."

Judgments pro confesso were taken against the other heirs at law.

Eighteen deacons of the First Baptist Church of Morristown filed a joint and separate answer denying that the sixth clause of the will is void and averring that it is sufficiently definite that the testator's will and intentions can be understood and carried into execution by the administrator with or without the supervision of a court of equity.

They also denied that the seventh clause of the will is void or that it is so indefinite as to be incapable of execution, etc. They also denied that the First Baptist Church of Morristown is an unincorporated institution and alleged upon information and belief that it had been incorporated by a decree of the Chancery court of Hamblem county. Also they stated: "But if the court should find that the First Baptist Church of Morristown is not an incorporated religious body by decree of court or otherwise, or that the decree incorporating same is invalid and of no effect, defendants insist and charge that a fair construction of clause seven of said will is that the testator bequeathed the residue of his estate to these defendants as individuals and as joint trustees to administer his estate for charity in the community in which said First Baptist Church is located." They also alleged that they were suitable persons to administer a trust for charitable purposes, and were so known to be by the testator, and that they could administer the trust so as to carry out the will and intention of the testator.

On these pleadings proof was taken, and an agreement was entered into that neither the First Baptist Church of Morristown, nor the Deacons thereof, were ever incorporated, but are both, in fact, unincorporated.

The proof shows that the church, though unincorporated has been in existence for more than one hundred years and now has a membership of about seven hundred. It owns a large church-house with a seating capacity of 1000 people, and a parsonage; the church-house being at the corner of Main and Jackson streets, Morristown.

It has a large auditorium with a balcony and pastor's study. Also a basement for sunday-school work, and an additional three story sunday-school department containing 24 class rooms. In the church are a motor pipe organ worth $17,500, a grand piano worth $1,400, one upright piano worth $500, another worth $250, and a small organ worth $50. The church-house also has a ladies' parlor, and a kitchen with cooking range, dishes, etc., in the basement. All of the property owned by-the church is worth between $100,000, and $125,000.

The deacons are all men of high principles, high standing and are splendid christian gentlemen. Many of them are prosperous business men, and we have no doubt but that they are in all respects capable and competent to handle in trust any property which might be put in their hands.

They are thoroughly organized as a board and, in connection with the pastor and church-treasurer, handle all of the business affairs of the church. They have monthly meetings, of which minutes are kept, and report their actions to the entire congregation. They are elected by the entire membership of the church, and serve for life. But the number of deacons is variable and, generally speaking, fluctuates with the number of the membership in the church.

At the time of the death of Mr. Davis, and at the time of the filing of the bill, there were 18 deacons. But between the time of the filing of the bill and the taking of the proof, two of these deacons had died or moved away from Morristown, and two others had been elected to take their places. Also, at the time of the taking of the proof, the number of deacons had been increased from 18 to either 23 or 24, by the election of additional deacons.

Neither the value of the estate left by Mr. Davis, nor the value of the fund involved in this suit are shown.

The chancellor decreed that the sixth and seventh clauses of the will are void, and ordered the complainant, administrator with the will annexed, not to use the funds as directed in the sixth clause.

He also decreed that the deacons were not entitled to the residue, as provided in the seventh clause.

The basis of the decree was that:

"The court is of the opinion, and doth adjudge and decree that the sixth provision of said will, wherein the Executor is directed to use the interest on the residue of the estate of D. W. C. Davis, to assist in the educating of some bright boy or girl in indigent or needy circumstances, is so indefinite as to be incapable of execution. That the seventh clause of the will is void because the Deacons of the First Baptist Church of Morristown are not a legal entity, or an incorporated body, and the discretion given to said Deacons with reference to the manner in which said funds shall be used is so

broad as to render said provision incapable of execution, and the provisions thereof are so indefinite as to render same void.''

It was accordingly further decreed that: "the heirs of the said D. W. C. Davis are entitled to the residue of the property of which he died seized, now in the hands of said administrator with will annexed, to-wit; defendant, (complainant), W. E. Howell, after the payment of all just debts, legacies, etc., incident to the administration of said estate, and he will make distribution accordingly, and in the manner provided by law.''

The deacons were taxed with all the costs of the cause, incident to making them parties to the suit, and also with the costs of depositions taken by them. All other costs were ordered to be paid out of the funds in the hands of the complainant, as administrator, etc.

From the action of the court in holding the sixth and seventh clauses of the will void and decreeing that they were not entitled to the fund at the expiration of ten years, as provided in clause seven, and adjudging any part of the costs against them, the deacons prayed and were granted an appeal to this court. They failed to perfect their appeal but filed the record for writ of error, and assigned error as follows:

1. "The chancellor erred in holding and decreeing the sixth and seventh Paragraphs of the will invalid, and especially in holding the Seventh paragraph of the will invalid; and should have declared said paragraphs of the will valid, and that the appellants, as Deacons of the First Baptist Church, and as trustees under the will took the residue of the estate of the decendant at the end of the period mentioned therein, to-wit, ten years."

2. "The chancellor erred in taxing the appellants with any part of the costs of the cause; and should have directed all the costs of the cause to be paid out of the estate, regardless of his holdings otherwise.

"The appellants, who are acting alone in the capacity of Deacons of the First Baptist Church of Morristown, and who have no interest personally in the suit, are at no fault whatever; that the decedent made the provision in the will, which is attacked in the bill, and are at no fault whatever that they were made parties to this suit; and of course; being made parties and acting as trustees, or Deacons, of the church, and not for themselves, and in fact acting as trustees under the will, no costs whatever should have been taxed to them.

"If, as a matter of law the provisions of the will is void, then the only person at fault in the matter is the decedent himself, and his estate should bear the costs of it."

3. "The chancellor erred in sustaining the objections to the testimony offered by the appellants; and should have held said testimony competent and admitted the same."

The attorney for the deacons has filed a brief in support of these assignments of error, and has argued the case at bar of this court.

The heirs at law of Mr. Davis, deceased, have neither filed a brief, nor did any attorney representing them appear and argue the case in this court, and they are apparently not in the attitude of resisting, in this court, the appeal or writ of error, of the deacons. But the attorney for the complainant, Mr. Howell, administrator with the will annexed, has filed a brief and has argued the case, and strongly resisted the effort of the Deacons to uphold the validity of clauses six and seven.

With reference to the third assignment of error; The record does not show that the chancellor sustained, or otherwise acted upon, any objection or objections to any testimony offered by the Deacons. Indeed, the record does not show that any objection or objections were made to any of the testimony of the Deacons. The depositions of the pastor and of two of the Deacons appear in the record, and we have stated the facts in accordance with their testimony. The third assignment of error is, therefore, not well taken and is overruled.

We are of opinion that the seventh clause of the will is void. The law in Tennessee with reference to charitable trusts has been fully covered by a line of decisions beginning with Green v. Allen, 24 Tenn., 204, and extending through Ewell v. Sneed, 136 Tenn., 602, and Gibson v. Frye Institute, 137 Tenn., 452. The previous cases are all cited in the two latter cases.

Under these decisions, if clause seven is treated as bequeathing the property directly to either the Deacons of the First Baptist Church of Morristown, or to the church itself, it is void because both are unincorporated. Cobb v. Denton, 6 Baxt., 235; Frierson v. Presbyterian Church, 7 Heisk., 683; Rhodes v. Rhodes, 88 Tenn., 590.

If it is treated as bequeathing the property to the Deacons, as trustees, the church being the beneficiary; it is void, because a charity must stand or fall as it is found to exist at the death of the testator, and the Deacons and church being unincorporated, no persons could, on the date the testator died, in legal contemplation be regarded as existing with legal capacity to take, as trustees. (Certainly, on the date the testator died, no one could be regarded as being a Deacon ten years later.) Therefore, under White v. Hale, 42 Tenn., 77, Daniel v. Fain, 73 Tenn., 319, and Ewell v. Sneed, supra, the attempted trust would be void.

But we do not think clause seven is susceptible of either of the above constructions. It seems to us that the proper construction of it is merely that the Deacons are sought to be made trustees, and that the object of the trust is: "charity to the poor regardless of denomination." If this construction is correct, then even though the Deacons could be regarded as being legally capable of taking and acting as trustees, nevertheless the trust is void, because it is not "definite in its object." Ewell v. Sneed, supra. Indeed, we can think of no more indefinite object of an attempted charitable bequest, than the only object stated in clause seven, namely; "charity to the poor regardless of denomination." The word "charity" is so broad in its meaning that no one could even guess at how the testator desired his money to be spent. We are therefore clearly of opinion that this attempted bequest is utterly void because it is not "definite in its object," as required by the decisions collated and approved in Ewell v. Sneed, supra. And this regardless of whether it could be treated as being supported by trustees capable of taking and executing the attempted trust. See also Rhodes v. Rhodes, 88 Tenn., 637; Reeves v. Reeves, 5 Lea, 646; State v. Smith, 16 Lea, 662; Johnson v. Johnson, 92 Tenn., 559; Jones v. Green, 36 S. W., 729.

If this view is correct, then the trust cannot be saved by Chapter 137, Acts 1917, even though that act was passed to meet the decision in Ewell v. Sneed, supra, and eliminates the necessity or requirement of charitable bequests being to trustees to support them. The act does not purport to eliminate the necessity of charitable trusts or bequests being definite in their objects, and does not attempt to enact anything with reference to the objects of such trusts.

Since it is discussed in the briefs, we might state here that in our opinion the Act of 1917, was probably passed to meet the holding in Ewell v. Sneed, supra. It is true that in the report of that case in 136 Tenn., the caption states "Jackson. April Term, 1917," whereas the act was passed on March 29, 1917; which (taken alone) indicates that the act was passed prior to the decision of the case. But Ewell v. Sneed, is expressly referred to in Gibson v. Frye Institute, 137 Tenn., 452, as having already been decided, and the caption of the Gibson case as reported in 137 Tenn. is "Knoxville, September Term, 1916." In the report of Ewell v. Sneed, in 191 S. W., 131, it appears that the case was decided on January 15, 1917, which was two months and fourteen days before the passage of the act. In the report of Gibson v. Frye Institute, in S. W. 1059, it appears that that case was decided on February 5, 1917— also before the passage of the act.

We, therefore, think it probable that the act was passed, in part, to meet the decision in Ewell v. Sneed, and perhaps also on account

of the fact that a question with reference to the rule of per-petuities was raised in Gibson v. Frye Institute.

But, as has been stated, the Act of 1917, cannot save the trust attempted to be created by clause seven, which we have held to be too indefinite in its objects and the first assignment of error, insofar as it is based on the action of the lower court in holding this clause void, is overruled.

In our opinion clause six of the will is valid, and should have been sustained by the lower court. We think it amounts to a conveyance to Mr. J. G. Templin (the executor nominated in the will) as trustee, and that its object, i. e. ''to assist in educating some bright boy or girl of indigent or needy circumstances,'' is sufficiently definite.

In Dickerson v. Montgomery, 31 Tenn., 348, the objects of the charities were for the benefit of ''home missions'' and ''foreign missions,'' and ''for education of indigent young men who are preparing for the gospel ministry in the Associate Reformed Church.'' The court said:

''But it is objected that the bequests for the benefit of 'home missions' and of 'foreign missions,' are too vague and uncertain, and are therefore void.

''It is certainly true that the individuals who may receive any part of this fund as compensation for labor as missionaries are not designated or known; nor are the persons designated who may be benefited by the ministry of these missionaries; but if this objection were allowed to prevail, it would defeat all charities, for it is of the very nature of a charity that the individual beneficiaries of the charity are unknown.'' It was recognized that trusts for charities are favored by courts of equity and will be upheld in cases where the trusts would fail for indefiniteness and uncertainty were they not charities. This case was approved in Ewell v. Sneed.

In Daniel v. Fain, 73 Tenn., 319, the object of the trust was: ''to assist some indigent young man in a preparatory course for the sacred ministry,'' and it was said in Ewell v. Sneed, that this was sufficiently definite for the trust to have been sustained had there been trustees to support it. Indeed in Ewell v. Sneed, the object of the charity involved was: ''and the said money to be used in educating young ministers of the Presbyterian Church,'' and the court seems to have regarded this as being a sufficiently definite object.

We are therefore of opinion that in so far as the object of the trust is concerned, clause six is sufficiently definite, and as stated, we also think this clause can be treated as amounting to a bequest to the executor, as trustee, and therefore, that the trust is supported by a trustee.

A devise of the rents and profits and income is in effect a devise of the property itself. (Johnson v. Johnson, 92 Tenn., 559, a charitable trust case.) And there is nothing unusual in an executor being regarded, by virtue of the wording of a will, as a trustee, although the property is not expressly devised or bequeathed to him, and although he is not spoken of in the will as "trustee." Rhodes v. Rhodes, 4 Pickle, 637; Cobb v. Denton, 6 Baxt., 235, both charitable trust cases. See also footnotes to Shannon's Code, Sec. 3976. The will had (in clause three) already directed the executor to sell all of the testator's goods and chattels and to place the proceeds in a general fund, the interest from which, by clause six, the executor was directed to use for a period of ten years to assist in educating some bright boy or girl of indigent or needy circumstances.

We think this amounted to a conveyance in trust to Mr. J. G. Templin, the executor nominated in the will, and that if he had qualified as such executor, and had been willing to execute the trust, he would have been entitled to invest the fund and apply the interest therefrom as directed in clause six of the will. It is true that in executing the trust he would not have been acting within his legal duties as executor, i. e. by virtue of his office as executor, but would have been executing what is considered in law as a personal trust. It is also true that the complainant, by virtue of his appointment as administrator with the will annexed, did not become authorized to execute this personal trust, and is only empowered, by virtue of his appointment as administrator with the will annexed, to do such acts as Mr. Templin could have done, by virtue of his office as executor. Prichard on Wills & Administration, Sec. 554, page 532; Shannon's Code, Sec. 3976 & Notes; McElroy v. McElroy, 2 Cates, 137; Hardin v. Hassell, 10 Cates, 143.

But, as stated, we think that clause six amounted to a bequest to a trustee, within the meaning of the decisions in this State, and that such conveyance to such trustee is sufficient, from a legal standpoint, to support the trust. This being true, the trust was valid without the aid of the Act of 1917, and it would have been proper for the lower court to have appointed the complainant as trustee and ordered him to execute the trust. This because the case is one where a designated person, having legal capacity to take and execute, was made trustee by a bequest in trust to him, but failed and declined to accept the trust and serve as trustee, and in such cases, the objects of the trust being definite, the chancery court had power to appoint a trustee and order the execution of the trust. Ewell v. Sneed, supra.

But the complainant, administrator with the will annexed, insists that the question of the validity of clause six is not open to

adjudication in this court, because the Deacons, although they prayed an appeal which, however, they failed to perfect by making bond, from the action of the chancellor in decreeing clause six to be void, and filed the record for writ of error, and assigned error on such action, had no interest in that matter, and therefore that their writ of error and assignments of error are ineffectual to open the question for review.

As was stated in the early part of this opinion, none of the heirs have appeared in this court and resisted the efforts of the Deacons, by their writ of error, and assignments in support thereof, to uphold the validity of these two clauses of the will, and the complainant alone seems to be seeking to defeat the intention of the testator as expressed in the will. Since the rights of no creditors are involved, and since the complainant does not appear to be an heir, we are at a loss to understand why he should be seeking to defeat the intention of the testator, instead of trying to uphold and carry the same into effect. In his bill he appealed to the court for a decision as to the validity of clause six, and for a construction of the same, and at least impliedly offered to execute its provisions if the court should be of opinion that it was valid. Under these circumstances we do not think he should be heard to say that the question is not before this court for review. Indeed, it seems to us that it was his duty to have himself brought the matter here for determination. However this may be, the Deacons in their answer, which was unexcepted to, denied that clause six was void, and thus made an issue on the question. The court ruled upon this issue and permitted them to appeal from such ruling; which they did, although they failed to perfect the same; all without objection by complainant; and we think the validity of clause six is properly before us for determination.

In view of the foregoing, the decree of the lower court, in so far as clause six was held to be void, will be reversed, and the case will be remanded to the lower court with instructions to authorize and direct complainant to execute the trust created by clause six, if he so desires; otherwise to appoint some other suitable person as trustee, and authorize and direct him to execute the trust. The debts of the testator, the legacies, if there are any remaining unpaid, and costs of the administration, etc., should be paid out of the fund, and at the expiration of ten years from the death of the testator, the corpus of the fund should be paid to the heirs of the deceased, etc., in accordance with our holding that clause seven is void.

This leaves only the question of costs. We do not think the chancellor should have taxed the Deacons with any part of the costs. They were, in good faith, attempting to uphold the intention

of the testator to establish charitable trusts which are favored by the law. They went to no more expense in defending the suit than was reasonably necessary, and the order remanding the case will provide that the costs which were taxed against them shall be paid out of the fund in the hands of complainant as administrator with the will annexed. Neither do we think they should be taxed with any part of the costs of this court; which will be paid by the complainant out of said fund in his hands.

Snodgrass and Portrum, JJ., concur.